### TABER et al. v. EYLER et al.

(Court of Civil Appeals of Texas. Amarillo. Dec. 6, 1913. Rehearing Denied Jan. 10, 1914.)

1. VENUE (§ 50*)—CHANGE OF VENUE—PREJUDICE OF INHABITANTS—DISCRETION.

Where plaintiffs sued for breach of a lease of property to be used as a saloon, the fact that the case had been once tried, resulting in a disagreement, that two of the defendants were long residents of the county well and favorably known, that one of them was the sheriff, etc., and that the issue of prohibition might enter into the case to some extent, did not require the court, in the exercise of discretion, to grant a change of venue; there being nothing in the case or record showing that the liquor question did or would enter into the case.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 73; Dec. Dig. § 50.*]

2. LANDLORD AND TENANT (§ 28*)—LEASE—EXECUTION—FRAUD.

Defendants, having negotiated with plaintiffs for a term lease of premises to be used as a saloon, had insisted on the insertion of a prohibition defeasance clause in case the property could no longer be used as a saloon, because of the adoption of a prohibition or local option law. Plaintiffs' agent presented the lease, which, after reading, defendants refused to sign, because it did not contain such clause, whereupon the agent took it away, promising to have the clause inserted. He returned and informed the defendants that the clause had been inserted, whereupon they signed the lease without again reading it to verify the agent's representation. *Held*, that such representation was a fraud, which defendants could urge as relieving them from liability for breach of the lease on the happening of such condition, though they might have discovered the truth by rereading the instrument before they executed it.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 82–84; Dec. Dig. § 28.*]

3. PLEADING (§ 291*)—WRITTEN INSTRUMENT —NON EST FACTUM—VERIFICATION.

In an action on a lease defendants pleaded the fraud of plaintiffs' agent in obtaining their signatures by the misrepresentation that he had inserted a prohibition defeasance clause, terminating the lease on the happening of an event, which, in fact, did happen, such plea was not in the nature of a plea of non est factum, requiring that it be verified, but was a plea of fraud, the burden of proof of which was on the defendants.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 864, 865, 866½–879; Dec. Dig. § 291.*]

4. PLEADING (§ 422*)—VERIFICATION—WAIVER.

Failure of defendants to verify their answer may be waived by plaintiffs filing only a general exception thereto.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1414–1417; Dec. Dig. § 422.*]

5. PLEADING (§ 349*)—ADMISSIONS — JUDGMENT.

Plaintiffs sued defendants for breach of a lease of property rented for saloon purposes, and defendants answered, admitting that they executed the lease, but alleging that their signatures were obtained by the fraud of plaintiffs' agent in falsely representing that he had inserted a defeasance clause, which would provide for the termination of the lease in case the property could no longer be used for saloon purposes, which in fact had not been inserted, and that the breach of the lease consisted of an abandonment of the premises because they could no longer be so used. Plaintiffs then filed a supplemental petition, alleging for the first time want of authority of their agent to agree to such defeasance clause, but alleging that he had made the contract for plaintiffs, and that they had accepted the same. Held, that defendants' admission did not include the allegation in the supplemental petition, but was only an admission of the cause of action originally pleaded, except as it might be defeated by the answer, and hence plaintiffs were not entitled to judgment on the pleadings.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1067–1069; Dec. Dig. § 349.*]

6. LANDLORD AND TENANT (§ 49*) — RELEVANCY—ISSUES.

On an issue as to fraud of plaintiffs' agent in obtaining defendants' signature to a lease of premises to be used as a saloon by falsely representing that he had inserted a clause in the contract for termination of the lease in case prohibition or local option was adopted in the county, evidence that such agent agreed to insert such a clause, and that defendants, who executed the lease, thought from his representation that the clause was in the contract when it was signed, was admissible.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 117–119; Dec. Dig. § 49.*]

7. LANDLORD AND TENANT (§ 49*)—BREACH OF LEASE—FRAUD—RENTAL VALUE OF PREMISES—EVIDENCE.

Where, in an action for breach of a lease of premises to be used as a saloon, defendants pleaded fraud of plaintiffs' agent in procuring their signatures on a misrepresentation that a prohibition clause had been inserted in the lease, evidence as to the rental value of the premises for purposes other than the sale of liquor, and that the rent was fixed in the lease on the understanding that a saloon would be operated on the premises during the term of the lease, was admissible to show that the prohibition clause was considered by the parties a reason for stipulations for a defeasance clause in case the premises could not be used for a saloon.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 117–119; Dec. Dig. § 49.*]

8. WITNESSES (§ 344*)—IMPEACHMENT—MATERIALITY.

In an action for breach of a lease, evidence that before the suit one of the defendants had transferred all of his property subject to execution to his nephew, who had agreed to reconvey it to such defendant's wife, was inadmissible to impeach such defendant, in the absence of any evidence to show that such transfer had been made with the intent to defeat the liability on which the suit was brought.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 800, 801; Dec. Dig. § 344.*]

9. PRINCIPAL AND AGENT (§ 171*)—ACTS OF AGENT—EXCESSIVE AUTHORITY—RATIFICATION.

Where plaintiffs' agent obtained a lease for a longer term than a year from defendants, covering certain premises to be used as a saloon, and obtained their signatures by false representation that it contained a prohibition defeasance clause, which would terminate it in case the property could no longer be used as a saloon, and plaintiffs accepted the rents for part of the term and until the sale of liquor became illegal, and defendants abandoned the premises, when plaintiffs brought suit for breach of the lease, the court properly charged that the agent in making such representation represented plaintiffs, who could not accept the contract so far as it was to their advantage and repudiate the defeasance agreement if it had been made.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 644–655; Dec. Dig. § 171.*]

10. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF TESTIMONY.

Where, in an action for breach of a lease, defendants claimed that their signatures had been obtained by false representations of plaintiffs' agent that the lease contained a prohibition defeasance clause, an instruction that, if the clause had been agreed to, and plaintiffs' agent promised to put it in, and represented he had, and defendants thought he had, or they would not have signed the lease, and were deceived, and failed to discover its omission by reason of the agent's false representations, plaintiffs could not recover was not objectionable in that the clause, "by reason of the fraudulent representation" of the agent, was on the weight of the testimony.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

11. TRIAL (§ 252*)—INSTRUCTIONS—APPLICABILITY TO ISSUES.

Where, in an action for breach of a lease, defendants claimed that their signatures had been obtained by the fraud of plaintiffs' agent in misrepresenting that the lease contained a prohibition defeasance clause, and that the clause had been omitted by the fraud or mistake of the agent, but the trial court withdrew the question of mistake, and only submitted the question whether the defendants were induced to sign the contract by the agent's fraudulent misrepresentation, a request to charge based on the mistake was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

12. PRINCIPAL AND AGENT (§ 137*)—AUTHORITY OF AGENT—ESTOPPEL—KNOWLEDGE.

Where, in an action for breach of a lease, defendants claimed fraud on the part of the

plaintiffs' agent in procuring their signatures by a misrepresentation that the lease contained a prohibition defeasance clause, and it appeared that the agent executed the lease for plaintiffs as their attorney in fact, defendants were not estopped, as against plaintiffs, to claim that plaintiffs were bound by such representations, in the absence of proof that defendants had any knowledge of any limitation on the agent's authority as to the making of the contract.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 492–494; Dec. Dig. § 137.*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by C. C. Taber and others against Charles Eyler and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Gustavus & Jackson, of Amarillo, for appellants. Crudgington & Works, of Amarillo, for appellees.

HUFF, C. J. The appellants, C. C. Taber and wife, Bertie Taber, sued Charles Eyler, W. M. Burwell, and N. E. Hord, for breach of a lease contract. The allegation of the petition is, in effect, that on the 11th day of November, 1910, appellants leased to Charles Eyler, lot No. 11, block No. 32, Glidden & Sanborn addition to the city of Amarillo, of of the dimensions 30x140 feet, with a certain two-story building situated thereon, and certain additions thereto, a part of which was then leased from appellants by other parties, and by the terms of the lease the entire lot, with all improvements thereon, were leased to Eyler, and an assignment and right to collect the rents becoming due from all such tenants, and which lease contract was not to interfere with the other tenants. The lease was to begin October 14, 1910, and run to March 1, 1914, for the consideration of $8,133.33, to be paid monthly in installments of $200 each, the first installment from October 14, 1910, to March 1, 1911, was paid and receipt acknowledged, and the other installments of $200 per month to be paid in advance on the first day of each succeeding month, and in case of the failure to pay any installment, suit could be brought for the entire amount unpaid. It is alleged that Felix A. Bryan made the contract in the name of appellants, which they thereafter accepted and ratified. In order to secure and guarantee the lease contract, appellees W. M. Burwell and N. E. Hord guaranteed the installments of the rent according to the terms of the lease contract; that Eyler went into possession of the premises, collected rent from the other tenants, and paid all rent installments up until about the middle of November, A. D. 1911, when he vacated the premises, and on December 1, 1911, failed to pay the installment then due, and at all times since said date. Appellants elected to declare all installments due, amounting to the sum of $5,400, with interest and attorney's fees, and prayed for judgment therefor.

The appellees, in their answer, allege, in substance, that Eyler rented the premises for saloon purposes in which to carry on the business of retailing intoxicating liquors, and that the rent for such business was greatly in excess of the rent obtainable for any other business, and that it was so known by the parties at the time the contract was entered into, and that Eyler would not have paid such rent for any other business, or for any longer time, than he could carry on such business lawfully therein. It is further alleged that Bryan, the agent of appellants, by fraudulent acts and representations, induced the appellees to sign the lease contract, and that at the time Bryan acted for appellants in the preparation and execution of the contract.

The allegation in the answer is as follows: "That the drafting of said contract was left to said Felix A. Bryan by these defendants, appellees, after the terms and conditions of same had been fully discussed and were fully understood by him and the defendant Eyler, as hereinbefore stated; that said Bryan prepared a written draft of said contract on or about the 11th day of November, 1910, and brought same to the Gosser Cigar Store, on Fourth street in Amarillo, Tex., where defendants were at said time and presented same to defendant Eyler, who read same and discovered that said written draft of contract did not contain the provisions that said premises should be used as a saloon, and that if during the term of said lease conditions in Amarillo should be so changed by putting into effect a prohibition or local option law, whereby the carrying on of said saloon business and sale of intoxicating liquors therein should become unlawful, said contract should terminate and be at an end, whereupon said Eyler called the attention of said Bryan to the omission of said provision from said written draft of contract, and requested him to insert same before said contract should be signed in accordance with their real understanding. Said Bryan then stated that he would fix said contract according to said suggestion of defendant Eyler, by inserting therein said omitted provisions; the said Bryan, taking said instrument, left said cigar store and in a short time thereafter returned said written draft of contract, stating and representing to the defendant Eyler, in the presence of defendants Hord and Burwell, that he had changed the same according to said previous understanding, by inserting therein said omitted provisions, and that the same was all right and ready for signatures, whereupon, without reading said contract further, but relying upon the honesty and good faith of said Bryan in the preparation of said contract and the insertion therein, the provisions, etc., * * * defendant signed said contract." That the appellees had the utmost confidence in the good faith and truthfulness of Bryan, and in the statements and representations as to

the contract containing the provisions. That Eyler's attention was then being demanded by workmen, who were arranging the building, and that appellees hurriedly signed the instrument without re-reading. If they had known of the omission they would not have signed the same. They further allege that a prohibition election was held in the commissioners' precinct in which the property was situated, and that a law prohibiting the sale of intoxicants went into effect November 15, 1911, prohibiting the business for which the property was rented. Up to that time Eyler had regularly paid the rents, and after that time Eyler delivered the keys of the house and turned over the premises to appellant Taber, and that thereby appellees were relieved under the contract from the payment of further rents.

By supplemental petition, appellants deny that Bryan was their agent in the contract; that at that time they had left Amarillo and previous thereto had leased the premises to J. W. York and J. P. Jones, on the terms and price of the contract with Eyler set up in the original petition, and appellee Hord had guaranteed the York and Jones contract; that Bryan was only authorized to look after the property and collect the rents; that appellees knew or should have known of Bryan's authority; and that his act in making the contract in controversy was unauthorized. After its execution it was sent to appellants, and they ratified it as written and signed, and as so drawn became binding upon them, and in no other manner were they bound by the statements, representations, or negotiations by Bryan, including the defeasance clause. Appellants also pleaded estoppel, in that while they were in Amarillo, Eyler tried to negotiate a lease on the property for the purpose of opening up a saloon, and that appellants refused to enter into a contract by the terms of which he could use the property during such time only as he could legally conduct the saloon business, and thereafter leased same to York and Jones upon the terms set out in the petition, all of which Eyler knew. Immediately after making the contract with York and Jones, they left the county, and with Bryan authority to collect the lease money; that thereafter Eyler applied to Bryan to rewrite the contract, making Eyler the lessee instead of York and Jones; that if there was any negotiations or representation as to the defeasance clause, it was unknown to appellants and without authority on the part of Bryan, and Eyler then knew appellants would not lease with the defeasance clause in the contract; that appellants at no time had notice after the execution of the contract in question that it did not express the terms of the agreement, and, relying on its terms, they ratified it as written, and would not have done so if there had been a defeasance clause; they could have rented to other parties without said clause, and that the York and Jones contract was a solvent and binding contract, and could have been enforced, and would not have been released except upon the condition of getting a like contract from Eyler; that the appellees, or either of them, while occupying the premises, and until long after, notified appellants that the contract did not express the terms of the contract agreed upon. Appellants charge the appellees with knowledge of Bryan's authority to collect only the rent and look after the premises.

Trial was had before a jury and verdict rendered for the appellees, and judgment in accordance therewith, from which this appeal is taken.

[1] The first assignment of error is to the action of the court in refusing to change the venue on a motion of appellants presented at the September term, 1912, of the district court. The case was tried at the January term, 1913, of that court. The evidence on the motion was to the effect that Hord was a man of long residence in the county, and well and favorably known, and that Mr. Burwell was sheriff of the county, well and favorably known; that the principal jury material lived in the city of Amarillo. The case had been discussed to some extent. The issue of pro and anti prohibition might possibly enter into the case; where that was the case, some of the witnesses thought jurors were sometimes influenced by their conviction on that question. The case appears to have been tried once before, in which the jury was equally divided. One of the jurors testified that in his judgment it would be very hard for Taber to get a fair trial, considering Burwell's standing, and considering the three defendants in the case. The affidavits of appellants were properly controverted. We find no abuse of discretion by the trial court in overruling the motion to change the venue. There is nothing in the case or record showing that the question of prohibition did or would enter into the case. One party leased the property knowing the saloon was to be run in it, and the other rented it to carry on the business of selling intoxicants. The facts show no greater prejudice against one than the other. There is no error of the trial court pointed out in overruling the motion, and no injury is shown, unless the fact that a verdict was rendered against appellants is such. The assignment is overruled.

[2] In the second assignment of error complaint is made to the action of the court in overruling a general exception to the answer of appellees. The propositions presented thereunder are to the effect that the allegations did not present either fraud, accident, or mistake, and are insufficient to show fraud perpetrated by Felix A. Bryan upon appellees, because, after discussing the defeasance clause, appellees signed without re-reading the instrument, and no sufficient excuse is pleaded excusing them from doing so.

It is alleged the defeasance clause was agreed to, and that it was intended by all

parties that it should be in the contract; that when first presented to appellees for their signature they read it over, and found that the clause had been omitted and Bryan's attention was called to the omission, whereupon he assented thereto and took the instrument for correction in that particular, and after some time returned with the instrument, and stated he had corrected it, and that it was now all right and in accordance with their agreement, and upon such representations they accepted his word, believing at that time in his honesty and truthfulness, signing the same without re-reading; that they were further prevented from reading it because of hurry occasioned by the demand upon their time by workmen engaged in work on the building; that they relied upon Bryan's statement, but for which they would not have signed the same.

If the clause agreed upon was not in the instrument the statement that it was by Bryan was clearly a fraud. He had taken the instrument to put it in; he of course knew he had not. The allegation is that the appellees believed him, and had they known it was not, they would not have signed it. It is urged they should not have relied on this statement, but should for themselves have read it. Whether the reliance on the statement made by Bryan and their hurry at the time is sufficient excuse is the question for our determination. It has been frequently said if the representations were of such a character as to induce the complaining party to rely on them, and he did believe them to be true, this would be sufficient for relief, though he may by investigation have discovered the truth. Conn v. Hagan, 93 Tex. 334, 55 S. W. 323; Labbe v. Corbett, 69 Tex. 503, 6 S. W. 811; A. F. Land Mortgage Co. v. Pace, 23 Tex. Civ. App. 222, 56 S. W. 384, 385; Ry. Co. v. Shuford, 36 Tex. Civ. App. 251, 81 S. W. 1196; Hall v. Bank, 36 Tex. Civ. App. 317, 81 S. W. 762; Ry. Co. v. Harris, 65 S. W. 885; Chatham v. Jones, 69 Tex. 744, 7 S. W. 600.

If Bryan made the statement that he had put in the clause after he had agreed to do so when he knew he had not done so, and that, too, after taking the instrument to put in the very clause he represented he had, we do not think it lies in the mouth of appellants to say to appellees, "You might have known that what my agent represented was false by re-reading the deed." Labbe v. Corbett, 69 Tex. 503, 6 S. W. 811. The appellees were misled, according to the allegations, by fraudulent representation, caused by their confidence in the agent's truthfulness, to sign the instrument. This should not constitute such negligence as will refuse appellees relief from the consequences of such fraudulent representations. Conn v. Hagan, supra.

[3] Under this assignment appellant presents the proposition that the plea in this case was in effect a non est factum, and, not being verified, as required for such pleas, the general exception should have been sustained. We are not inclined to treat the plea in effect as a non est factum. However, from some of the authorities the question is not free from difficulty. The plea of non est factum places the burden of proving the execution of the instrument on the one claiming under it. Such could not be the result in this case. The execution of the instrument in question is not denied, but admitted. The contention is that it does not give all the terms of the contract, and that through fraudulent representations the omission was not known at the time of its execution. This allegation clearly put the burden on the appellees to show that the parties had agreed to the clause omitted as part of the contract; that it was omitted, and that such omission was occasioned by the fraudulent representations. The case cited by appellants (Hurt v. Wallace, 49 S. W. 675) is one where the defendant alleged that the instrument he signed was, he thought, a receipt for cattle and not a note, the instrument sued on. Hence he denied the execution of the note, but there is no denial of the lease in this case. The question presented was, Did it contain all the terms of the contract of lease agreed upon? The writing proved the terms as contended for by appellants, to show other terms not therein contained rested on appellees. The following authorities, we think, sustain us: Dewees v. Bluntzer, 70 Tex. 406, 7 S. W. 820; Kansas Mutual Life Ins. Co. v. Coalson, 22 Tex. Civ. App. 64, 54 S. W. 388; Ruiz v. Campbell, 6 Tex. Civ. App. 714, 26 S. W. 295; Cook v. Roberson, 46 S. W. 866; Ry. Co. v. West, 88 S. W. 426; Ry. Co. v. Jackson, 86 S. W. 51.

[4] If the failure to swear to the answer could be waived, appellants did so by presenting only a general exception. Sworn pleadings, as a rule, are for the benefit of the opposite party, and he may waive it by not urging the failure in the lower court. A non est factum, however, if not sworn to, does not put the plaintiff upon proof of his case, and no exception would be required. Drew v. Harrison, 12 Tex. 279. The second assignment is overruled.

[5] The appellants requested the trial court to instruct a verdict for them, and the refusal of the court to do so is the basis for the third assignment. The first proposition under this assignment is to the effect that Felix A. Bryan, without authority, in the absence of the appellants, executed the contract which was thereafter accepted by them as written, and that appellees partly performed the written contract, and, the suit being for the balance due thereon, the admission of appellants' cause as pleaded precluded appellees from defeating the same by fraud. The original petition does not

allege want of authority on the part of Bryan to agree to the defeasance clause, but alleges that he made the contract for appellants, which they accepted. After the appellees answered, setting up the defeasance clause, and fraud in its omission, appellants replied thereto by supplemental petition, alleging lack of authority in Bryan to make an agreement for the alleged defeasance clause. The office of a supplemental petition is to reply to the answer, and not the statement of the cause of action required to be made in the original petition. The admission of the appellees in this case was that appellants had a good cause of action, except as the same should be defeated by their answer. This was not an admission that Bryan had no authority to agree to the defeasance clause of the contract, or that appellants accepted without notice that such clause had been made, as set out by the supplemental petition. It was only an admission of the cause as originally pleaded and to which appellees were then answering. As hereinbefore said by us, in this case, we think the burden was on appellees to establish their defense, and we do not think the court committed error in permitting them to open and conclude. Neither do we think there was error in refusing to instruct a verdict for appellant because of the admission filed. The admission did not include the allegation in the supplemental petition. Smith v. Traders' National Bank, 74 Tex. 541, 12 S. W. 221; Ney v. Rothe, 61 Tex. 374; Ramsey v. Thomas, 14 Tex. Civ. App. 431, 38 S. W. 259. We do not think the court erred in refusing to instruct a verdict for the appellants for the reasons stated in the second proposition under this assignment. The contract purports to have been executed by Bryan, as attorney in fact for appellants. Appellants accepted the contract, and, whether he had authority or not to agree to the defeasance clause, it was one of fact, which we think from a view of the record presents evidence which at least tends to establish the agent's authority. We do not think under the facts in this case this court should, as a matter of law, say that negligence was conclusively established, and that appellees did not rely upon the fraudulent representations by Bryan. The third assignment is overruled.

[6] The fourth assignment of error is to the effect that the court erred in admitting the testimony of Charles Eyler, N. E. Hord, and G. A. Gosser, in substance, that Felix A. Bryan agreed to insert the prohibition clause in the contract, and that they thought, from Bryan's representation, the clause was in the contract when signed. This testimony, under the issues in the case, was admissible, and the court did not err in admitting the testimony.

[7] The fifth assignment is to the effect that Charles Eyler's evidence as to the rental value of the property for purposes other than saloon purposes was not admissible, and therefore irrelevant. Under the issues presented by the pleadings we think it was admissible. It is alleged, and the testimony tends to show, that it was known by all parties that the rental value of the property would not be as much for any other purpose as for a saloon, and the price was fixed on the understanding that a saloon would be run during the term of the lease in the house. We think it tends to show, and was a circumstance showing, that the prohibition clause was considered by the parties a reason for stipulations for a defeasance clause in case it could not be used for a saloon.

[8] The sixth assignment complains of the action of the court in refusing appellants on the cross-examination of the witness N. E. Hord, to show by him that after the execution of the contract in question, and before the bringing of this suit thereon, he and his wife transferred all of his property subject to execution to his nephew, and that after that transfer the nephew, for $1 consideration, reconveyed to Hord's wife. It is asserted in the proposition thereunder that it is legitimate cross-examination of a party to impeach him by showing an effort to place his property beyond the reach of execution to be issued on a judgment that might be obtained in the suit then threatened, and in this case the acts related to his liability upon the contract. The witness was one of the guarantors to the contract. It the witness had been asked whether or not he transferred the property to defeat any judgment that might be obtained against him on the guaranty of the lease contract, it would perhaps have been proper to have permitted him to answer the question, but to prove the transfer of all his property subject to execution generally would require entering into another transaction, and open another case perhaps as long as the one on trial. If the witness had transferred his property to defeat this liability, it would have been germane, but simply to prove the transfer of the property generally would or might require a long explanation. The question should have been, Did the witness transfer the property to defeat the guaranty? and should have been confined to that intent. If it was conveyed with some other intent, then it was not admissible. A witness cannot be impeached by proving discreditable acts on his part not bearing on the issue involved in the suit. The witness should have been asked if he made the transfer to defeat any judgment which might be obtained on the contract. If he denied that he did, then the facts showing such transfer could have been offered to impeach him. The impeachment would not have been an immaterial issue. We hold the bill as taken shows no reversible error. Ry. Co. v. Johnson, 83 Tex. 628, 19 S. W. 151; Moody v. Roland, 46 Tex. Civ. App. 412, 102 S. W. 911; Harrington v. Clafline, 28 Tex. Civ. App. 100, 66 S. W. 898. In the case cited by appellants (Hynes v. Win-

ston, 40 S. W. 1025), the question propounded, which the court there held should have been permitted answered, "called for an admission or denial that he had transferred his property for the purpose of defeating the payment of the notes sued on, and had advised his codefendants to do likewise." Such was not the question here. Assuming the transfer fraudulent, yet it does not follow the purpose was to defeat liability on the contract in question. The transaction may have been legitimate, and might have been explained; hence the necessity to confine it to the specific issue of the case.

The eighth assignment complains of the fourth paragraph of the court's charge, which is to the effect, if the jury believed from a preponderance of the evidence that Eyler and appellants, through their agent Bryan, entered into an agreement before the execution of the lease contract, that it should contain a prohibition clause, as set out by appellees in their answer, and that as drawn when first presented, it did not contain the clause, and that Eyler refused to sign unless it contained that clause, and if they found that Bryan took it away for the purpose of writing said clause into the contract, and afterwards returned and announced to the appellees that he had inserted the clause in the contract, and that Eyler believed and relied upon such promise and representation, and that the appellees would not have executed the contract had they known the provision as to prohibition was omitted therefrom, and they were deceived and failed to discover the omission, "by reason of the fraudulent representations of said Felix A. Bryan, then, if you so find and believe from the evidence," they would return a verdict for appellees. The propositions urged are that the charge assumes that Bryan was the agent of appellants in making the contract, and that no authority was imposed by the charge upon appellees to read the contract, and, further, that it assumes that the representations theretofore made by Bryan, were fraudulent.

[9] The lease contract in this case was signed by Bryan as attorney in fact for appellants, purporting to be the conveyance by appellants. It is alleged in the petition that the lease was made by Bryan in the name of appellants, which they thereafter accepted and ratified. The evidence is that the rent was paid until prohibition went into effect, and the appellants received and accepted the money. There was no controversy on this point. The real contention appears to be that, as appellants testified that Bryan was only authorized to collect the rents for property at the time of executing the lease, he had no authority to make the lease contract, and especially had no authority to agree to the clause terminating the lease when prohibition would go into effect; that appellants would not have made the contract with that clause, and if it was agreed to by Bryan, he

had no authority to do so, and that he had done so unknown to them upon receipt of the written contract. If there was such agreement made by Bryan, and he had no authority to do so, and the same was not ratified, then appellants have no case. For the lease is for a longer term than one year, and all rents were paid for that year. Appellants cannot accept that part of the contract which is to their advantage and reject the other. They must accept the contract as agreed to in its entirety. If they learned that, upon trying to collect the rents, there was such clause which should be part of the contract, they should have at once repudiated the contract and Bryan's authority to make it. When they instituted suit on it they made Bryan's agreement theirs. They could only contend that in fact there was no such agreement, but if the facts show there was, as the jury found, then that part of the agreement was as valid as any other, and they ratified it as much as they did the other. The court, therefore, we think, could properly instruct the jury Bryan was appellants' agent. Sargent v. Barnes, 159 S. W. 373; Bank v. Cruger, 91 Tex. 446, 44 S. W. 278; Allen v. Garrison, 92 Tex. 546, 50 S. W. 335; We think it is the established doctrine by the decisions of our court that, if a material representation is made, and is of such character which will induce a party to rely upon it and to believe it true, and to act upon it, this will be sufficient, although he might have ascertained by ordinary diligence that it was not true. This rests on the grounds that a party ought not to profit by his own fraudulent representations and obtain relief from its consequences because the one deceived could have learned of the fraud if he had been diligent. The authorities cited by us in discussing appellees' general exceptions sustain the above proposition, and also the following authorities: Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900; Ry. Co. v. Shuford, 36 Tex. Civ. App. 251, 81 S. W. 1196; U. S. Gypsum Co. v. Shields, 106 S. W. 724; Id., 101 Tex. 473, 108 S. W. 1165; Western College Piano Co. v. Anderson, 45 Tex. Civ. App. 513, 101 S. W. 1061.

[10] We do not think that the clause in the court's charge, "by reason of the fraudulent representations of Felix A. Bryan," was upon the weight of the testimony, when the context of the charge is considered. The charge told the jury, if they found the clause was agreed to, that Bryan promised to put it in; that he represented he had; that appellees thought he had; that they believed his statements; and that they would not otherwise have signed the contract; that they were deceived, and failed to discover it was omitted by reason of the fraudulent representations. If the jury found all the preceding facts, the law denounced Bryan's representations as fraudulent, but the court, by the charge, left the jury to say whether

it was by reason of the fraudulent representations. The charge would have been as strong without the use of the word "fraudulent," hence we find no injury. If by a strained construction the charge could have been held to instruct the jury, such representations which they were left to find were fraudulent, we yet think there would be no error. The eighth assignment is overruled.

The seventh assignment assails the third paragraph of the charge of the court, and the ninth assignment assails the fifth paragraph. The third paragraph in effect instructed the jury that a principal is liable for the fraud of his agent, and that he cannot take any benefit from the fraudulent representations made by the agent, though ignorant of the fraud, and a party dealing with the agent, if he suffered therefrom, may recover compensation from the principal, and may, by reason of his confidence in such misrepresentation, rescind the contract. The fifth paragraph, in substance, told the jury if Bryan did not have authority to execute the lease contract, yet if appellant knew said contract had been executed, ratified and acquiesced in the acts of Bryan, or, knowing it had been so executed by Bryan, accepted benefits thereunder, appellants would be bound by Bryan's acts in making the contract as much as if they had expressly authorized such acts before they were done. We have not undertaken to set out the charges in full but we believe the trial court rightly conceived the law and properly charged it.

In the case of Bank v. Cruger, 91 Tex. 451, 44 S. W. 278, Judge Denman quotes from Paley on Agency, with approval: "Contracts made for the benefit of another, without his privity or direction, may be rejected or affirmed at his election. But, by making the election to affirm it, he adopts the agency altogether, as well that which is detrimental as that which is for his benefit; but in seeking to enforce contracts entered into by agents, the principal is subject to have them impeached by any conduct of his agent which would have that effect if proceeding from himself. Every species of fraud, misrepresentation, or concealment, therefore, in the agent, affects the principal's right to recovery."

In Allen v. Garrison, 92 Tex. 546, 50 S. W. 335, Judge Gaines said: "When an agent has effected a transaction for his principal by fraudulent practices the latter cannot exempt himself from the consequences of such conduct by asserting that he had no knowledge of the fraud." The appellants, in bringing suit on the contract, thereby ratified the acts of the agent Bryan. They must abide by the entire contract as it was made by Bryan. They cannot avail themselves of its benefits without also accepting its burdens. They had the right of election. They by ratifying a part ratified the whole transaction. The ratification relates back, and

162 S.W.—32

made Bryan their agent throughout the transaction. 31 Cyc. 1259, 1280, and 1283. The seventh and ninth assignments are overruled.

[11] The appellants assign error in the action of the trial court in refusing the third, fourth, and fifth special requested instructions by the appellants. The assignments are numbered 10, 11, and 12. Each of the requested special charges is based on the plea of mistake in leaving out the prohibition clause, and that appellees could not recover if there was negligence on their part when they signed the instrument. The trial court withdrew the question of mistake in signing the instrument by appellees from the jury, and only submitted the question as to whether they were induced to sign the contract upon the fraudulent representation of Bryan that the clause was in the contract, and whether they were induced thereby to sign the same. The jury were not authorized to find for appellees if there was a mistake. Under the issues presented to the jury by the trial court, it was unnecessary to charge the law of mistake. We think there was no error in refusing the requested charges, and these assignments are therefore overruled.

The thirteenth assignment complains because the trial court refused to instruct the jury, as requested in the sixth special requested charge by appellants. The charge requested asked the court to instruct the jury, in effect, if Bryan agreed to the defeasance clause, but that prior to appellants' removal from Potter county they had rented to York and Jones, and that Eyler learned that appellants did not want to lease for a less term than until March 1, 1914, and that thereafter appellants rented to York and Jones, and that Bryan was given authority to look after the property and to collect the rents thereon, and that Eyler thereafter negotiated to take over the York and Jones lease, knowing at the time the terms of such lease, and thereafter the contract in suit was prepared and signed and sent to appellants, and that appellants, without knowledge of any negotiations for a prohibition clause in the contract, ratified that contract and released the York and Jones contract, and that they would not have accepted the contract sued upon and released the other had they so known of that clause, and that they have been misled to their injury, then appellees would be estopped from claiming fraud or mistake.

[12] The facts upon which estoppel is invoked against appellees is that Bryan had authority to collect the rent and look after the property. There is no fact showing that appellees knew Bryan had no authority to make the contract. On the contrary, he did make it for appellants, purporting to be the attorney in fact for appellants. The testimony shows that Eyler had, previous to the

York and Jones contract, tried to lease from appellants, but did not do so. Taber testified he would not have leased for a shorter term than until March 1, 1914. His testimony is that he knew nothing of the agreement made by Bryan for a termination of the lease if prohibition should become effective, and that he knew nothing of such contract or claim of one until after suit was filed.

We think the charge requested was not correct under the facts in this case. If Eyler sought Bryan and procured him to execute the contract, and secured an agreement that the clause should be put in the contract, and he then knew Bryan had no authority to make such contract, and after the contract was executed he knew the provision was left out, and, thus knowing, failed to notify Taber of such omission during the time he was holding under the contract, as he claimed it to be, we think then he should be estopped from claiming fraud on the part of Bryan. The fact that appellees may have known that appellants wanted to lease the lot for the full term does not charge them with the knowledge that they would not lease on the conditions stipulated for less than that term. From the fact that they may have known that Bryan had authority to collect the rents and look after the property, it does not necessarily follow that they therefore knew that he did not have authority to execute the lease contract. If the facts were sufficient to charge appellees with knowledge, and they induced appellants to accept the contract by their own wrong, then estoppel would apply, but, as we understand the requested charge, it recited certain facts which do not bring to appellees knowledge necessarily of Bryan's lack of authority, or that appellees were guilty of any actual wrong in inducing appellants to accept the written contract. Mere negligence on their part would not estop them from setting up the fraud of appellants' agent. To create an equitable estoppel the acts, declarations or silences must have induced the other party to act, and such conduct must have been actually or constructively fraudulent or injurious in result. Another element is that such acts or declarations must have been made to a party ignorant of the true facts, and known to the party making them, or ought to have been known, and must have been intended to induce the other party to act. In this case appellants knew whether or not Bryan was their agent. It was their duty to have at once repudiated his act, and to have notified appellees of the repudiation returning the contract. If Bryan was their agent, it was his duty to disclose to his principal the terms of the contract. If he did not, he deceived his principal as well as the appellees. His misrep-

resentations had, according to the pleadings and findings of the jury, disarmed appellees, and thereby exonerated them from diligence in ascertaining the terms of the contract as drawn. Mere negligence on the part of the appellees would not estop them. The appellants, according to their testimony, accepted the acts of a man who had no authority to act for them, thereby making his acts their own. They testified they were ignorant of the clause. Appellees testified they were ignorant that it was omitted. One or the other must suffer from the wrongful act of Bryan. In accepting the contract appellants and Bryan became one in identity, and it was the duty of the agent to communicate his knowledge to his principal. If he did not do so, the principal, rather than the other parties, should suffer. We think as the charge was drawn, and under the facts of this case, there was no error in refusing to give the charge to the jury, and this assignment is therefore overruled.

The fourteenth, fifteenth, and sixteenth assignments of error complain at the action of the court in overruling appellants' motion for new trial. The several grounds assigned in these assignments have each been considered under preceding assignments, and will be therefore overruled.

We find no reversible error, and the case is affirmed.