## DORMAN v CONNECTICUT FIRE INS. CO.

No. 3055.   Opinion Filed February 28, 1914.

(139 Pac. 262.)

1.   **INSURANCE—Contract—Authority of Soliciting Agent.** Ordinarily a traveling soliciting agent, without actual authority to contract, who is furnished by his principal, an insurance company, with no indicia of authority other than printed blank forms of application for insurance, addressed to it, which either negative the idea of authority to contract, or, as in the present case, is signed by the applicant without actual knowledge of its contents, does not have the apparent authority to enter into a contract of insurance.

(a)   **Quaere,** where such forms, within the actual knowledge of the applicant, are free from specific limitation upon the authority of such agent, does he thus have the apparent authority to bind such principal, as inducement to the making of such application, by a temporary contract of insurance, until such principal may reject such application?

2.   **SAME—"Contract of Insurance"—Essentials.** There is no contract of insurance unless the minds of the parties have met in agreement as to (a) the subject-matter, (b) the risk insured against, (c) the period of risk, (d) the amount of insurance, and (e) the premium.

3.   **SAME—Unaccepted Application—Effect.** An unaccepted application for insurance, accompanied by the premium, although retained without notice of objection for five days after its date and until the applicant has suffered the loss against which he desired the insurance, is not a contract of insurance.

4.   **SAME—Implied Acceptance of Application—Retention of Premium.** Acceptance of an application may ordinarily be inferred from the retention and application of the premium; but, when there is evidence reasonably tending to show that there was no such acceptance in fact, the law does not imply acceptance from such retention; and the adverse finding and judgment in the trial court is conclusive against appellant's claim of acceptance.

(Syllabus by Thacker, C.)

*Error from District Court, Grant County;*
*W. M. Bowles, Judge.*

Action by James Dorman against the Connecticut Fire Insurance Company, a foreign corporation.   Judgment for defendant, and plaintiff brings error.   Affirmed.

*C. S. Ingersoll* and *F. G. Walling,* for plaintiff in error.

*Scothorn, Caldwell & McRill,* for defendant in error.

Opinion by THACKER, C.   Plaintiff in error was plaintiff, and defendant in error was defendant, in the trial court; and this action was upon an alleged contract of insurance upon a growing crop of wheat, for loss sustained by hail pending an application for a policy; judgment being for the defendant upon the evidence. Plaintiff, on May 19, 1909, voluntarily applied to defendant for insurance by voluntarily approaching its agents and signing, without actual knowledge of its contents, an application in printed form furnished by defendant and prepared for signature by and in the hands of Joel Mulligan and C. L. Nash, who were then acting as defendant's subagents under D. M. Sullivan.   At the same time, plaintiff executed his note without full knowledge of its contents to said Nash, or to the Bank of Nashville, Okla., under the impression that it was to defendant, which note, said Nash cashed at said bank, for the full amount of the premium for such insurance.   Mulligan and Nash, who had no actual authority to issue policies or enter into contracts of insurance, and were merely traveling solicitors for and takers of applications and premiums in Grant county, Okla., addressed to defendant for such insurance, on the next following day, May 20, 1909, at Pond Creek, in said county, presented said application to said Sullivan, an agent with office there, and authorized to accept or reject such applications and enter into contracts of insurance.   On the third day next thereafter, May 23, 1909, plaintiff suffered the loss for which he sues.   When Mulligan and Nash, on the third day before the loss, presented the application to Sullivan, the latter first objected to it, and marked it "Refused" because it was for insurance upon the equivalent of 60 acres of wheat on one section of land in excess of the 100-acre limit which the rules of the defendant imposed; but, upon the suggestion of Mulligan and Nash, Sullivan immediately indicated a willingness to hold it pending an opportunity to present it to Mr. Rushmore, defendant's state agent, for his instruction upon it, in the belief that he might consent to its acceptance notwithstanding such excess; and the

said application was being so held, and was still not accepted by Sullivan nor presented to Rushmore on the fourth day after the day of its date, when plaintiff's loss occurred; the premium being held in the hands of Nash or Mulligan, or both.

It certainly cannot be, and apparently is not, contended that defendant expressly accepted the application and entered into a contract of insurance through its duly authorized agent, Sullivan; and, if there was such contract, it must be found in an acceptance inferred from the retention of the premium, or in an actually or apparently authorized acceptance of the application by Mulligan and Nash, and in a contract made on the part of the defendant through them; but, allowing the presumption we must in favor of the judgment of the trial court, no such acceptance or contract appears.

The only evidence upon which we may assume plaintiff claims there was such a contract is found in the retention of the premium and in the following voluntary statement made by the plaintiff, when one of his counsel asked him, the day of the week on which he signed the application, to wit:

"I asked when that *policy* would take effect; one or two of them, I could not say which, says, 'To-day noon at 12 o'clock; to-day noon at 12 o'clock.' "

It is unnecessary to determine whether this should be understood to mean more than that, if the application was accepted and a policy issued it would relate back to noon of May 19, 1909; but we cannot assume the trial court either accepted as true any evidence which would tend to impeach the judgment, and is in conflict with other evidence, or construed any dubious testimony otherwise than as favorable to the judgment; and, further, if we should so assume, we cannot assume the trial court found the existence of facts from which the authority of Nash and Mulligan to make such a contract would appear. Neither Mulligan nor Nash, who were witnesses for plaintiff, and apparently not unfriendly, was questioned or testified in regard to this imputed statement; and one of them, without contradiction, testified that the application was taken in the afternoon of the day of its date.

A contract of insurance consists of an agreement between the insured and the insurer, including the following elements: (1) The subject-matter; (2) the risk insured against; (3) the amount; (4) the period of risk; and (5) the premium; and there is no contract until the minds of the parties meet in these respects. 1 Briefs on the Law of Ins., by Cooley, 368, 392, 411, 513; 1 Law of Ins., by Charles Beach, Jr. 507; 1 May on Ins. secs. 43-65; 1 Joyce on Ins., secs. 45-50; Kerr on Ins., sec. 40, pp. 73-77; *Id.*, sec. 53, p. 113; *Shawnee Mut. Fire Ins. Co. v. McClure*, 39 Okla. 535, 135 Pac. 1150, and cases there cited; *Hartford Fire Ins. Co. v. Whitman*, 75 Ohio St. 312, 79 N. E. 459, 9 Ann. Cas. 218, and notes; *Bell et al. v. Hudson Bay Ins. Co. et al.*, 44 Can. Sup. Ct. 419, 21 Ann. Cas. 788, and notes; *New York Life Ins. Co. v. Babcock*, 104 Ga. 67, 30 S. E. 273, 42 L. R. A. 88, 69 Am. St. Rep. 134, and notes. As to an oral contract *in praesenti*, see *Van Arsdale-Osborne Brokerage Co. v. Cooper*, 28 Okla. 600, 115 Pac. 779; *Plat Whitman, Trustee, etc., v. Milwaukee Fire Ins. Co.*, 128 Wis. 124, 107 N. W. 291, 5 L. R. A. (N. S.) 407, 116 Am. St. Rep. 25.

An application for insurance is not itself a contract, but is a mere proposal, which requires acceptance by the insurer through some one actually or apparently authorized to accept the same to give it effect as a contract. 1 Briefs on the Law of Ins., by Cooley, 413; 1 Joyce on Ins., sec. 54; 1 May on Ins. (3d Ed.) sec. 43H; Elliott on Ins., sec. 106; Kerr on Ins., sec. 51-52; Richards on Ins. (3d Ed.) sec. 282; *Van Arsdale-Osborne v. Young*, 21 Okla. 151, 95 Pac. 778; *Shawnee Mut. Fire Ins. Co. v. McClure, supra.*

Nor does the mere retention of both application and the premium, without any action thereon, constitute a contract of insurance. *Van Arsdale-Osborne v. Young, supra; Northwestern Mut. Life Ins. Co. v. Neafus*, 145 Ky. 563, 140 S. W. 1026, 36 L. R. A. (N. S.) 1211, and notes; 1 Law of Ins., by Charles Beach, Jr., 499; 1 May on Ins., sec. 43H.

We have not overlooked the holding in *Van Arsdale-Osborne Brokerage Company v. Cooper, supra*, that "independent of the issuance and delivery of the policy the approval of said application may be made * * * impliedly by the acceptance and application of

the premium"; but in that case it was indisputable that the application was actually accepted. The policy was actually issued, the same was lost in the hands of the local agent of the insurer without having been delivered to the insured, and the latter had, in response to notification given by him that he had not received the policy, been advised that another policy would be issued and sent to him upon his signing and returning a lost policy affidavit furnished to him; and, further, in that case it is stated that the question was "whether any evidence tends to show the approval of the application."

In the present case, such an implication or inference of fact in respect to the application, after it reached the hands of Sullivan on the day after it was signed, is clearly negatived by other evidence.

Ordinarily a traveling soliciting agent, without actual authority to contract, who is furnished by his principal, an insurance company, with no *indicia* of authority other than printed blank forms of applications for insurance, addressed to it, which either negatives the idea of authority to contract, or, as in the present case, is signed by the applicant without actual knowledge of its contents, does not have the apparent authority to enter into a contract of insurance. Kerr on Ins. 203; Richards on Ins. Law (3d Ed.) 198; 1 Joyce on Ins., sec. 526.

The blank form of application furnished by defendant does not expressly limit the authority of its soliciting agents, except by the following provision therein, to wit:

"It is understood and agreed that a policy based on this application will in no event take effect sooner than noon of the day succeeding my having signed this application"—
and, in view of the fact that no good reason appears why such blank forms should not specifically limit the authority of such agents to that actually given, and such agents be instructed by their principal to furnish a copy to the applicant, we reserve decision as to whether such merely soliciting agents, furnished as in this case with such blank forms, might not be therefrom found to have the apparent authority, as inducement to the making of the application, to enter into a temporary contract of insurance, not incon-

sistent with the application itself, binding upon the insurer until the application is rejected by it, where the applicant has knowledge that such forms do not, in that respect, specifically limit the agent's authority (see 1 Briefs on Law of Insurance, by Cooley, 382, and 3 Briefs on Laws of Insurance, 2484, 2485; also 69 Am. St. Rep. 145); but, in the present case the applicant did not actually know the contents of the application, and had no knowledge as to whether the agent's authority was not further limited by the provisions thereof, and claims no contract of insurance other than a contemporaneous oral one somewhat inconsistent with the only limitation therein contained. The writing generally controls in such cases. Joyce on Ins. 61; Elliott on Ins. 159, 160; 2 May on Ins. 579; *Winnesheik Ins. Co. v. Holzgrafe,* 53 Ill. 516, 5 Am. Rep. 64; *Allen v. Mass. Mutual Acc. Ass'n,* 167 Mass. 18, 44 N. E. 1053.

Even if it had appeared that the application was such as the defendant was accustomed to accept and that it probably would have been accepted if finally acted on by defendant before it had knowledge of the loss, which is not true, the overwhelming weight of authority is to the effect that mere delay in passing upon an application is not equivalent to its acceptance, as will appear from an examination of the authorities cited *supra.*

Although it has been held that where a policy is issued after loss of the crops intended to be insured, and it appears that it would have been issued in time to have operated as insurance thereon but for the unreasonable delay of the soliciting agent of the insurer taking the application in transmitting it to the proper officer to pass upon same and issue the policy, the insurer is liable for the loss (*Boyer v. State Farmers' Mutual Hail Insurance Co.,* 86 Kan. 442, 121 Pac. 329, 40 L. R. A. [N. S.] 167, and notes), yet in the present case it does not so much as appear that the application was acceptable, or would in any event have been accepted; and neither that case nor the case cited in the note thereto (in 40 L. R. A. *supra*) tends to support plaintiff's contention in this case.

Except as already stated in this opinion, there was no evidence whatever, either of the authority of Mulligan and Nash to

enter into a contract of insurance binding upon defendant, or of any agreement between the plaintiff and these soliciting agents which, if they had authority, could be construed as a contract of insurance; and we do not feel authorized to disturb the judgment of the trial court, which, in effect, includes a finding of fact against· plaintiff upon both propositions.

For the reasons stated, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.