NATIONAL UNION FIRE INS. CO. v. PATRICK.   (No. 1251.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 21, 1917.)

1. APPEAL AND ERROR ⟲719(8) — ASSIGNMENTS OF ERROR—FUNDAMENTAL ERROR.

In an action on a policy insuring against damage to a cotton crop by hail, the error in rendering judgment for plaintiff, unsupported by the evidence, in that it was uncontroverted that the policy was not issued or effective until after the loss and had not been reformed, was fundamental, so that objections to the assignments of error were immaterial.

2. EVIDENCE ⊚⇒441(13)—PAROL EVIDENCE TO VARY WRITING—INSURANCE POLICY.

Where plaintiff applied for hail insurance, the application stating that the insurance was to be effective from the day the application was accepted and approved at the insurer's state agency, and the written policy stating that it was effective from noon of the day of its date, June 27th, the policy was conclusive evidence of the contract, unless impeached by fraud or mistake, though the state agent could have accepted the application when wired into his office, and though the insurance was applied for with the understanding that it was to be effective 24 hours after the application should be wired to the agency.

3. INSURANCE ⊚⇒130(2)—APPLICATION—NECESSITY OF ACCEPTANCE—"CONTRACT OF INSURANCE."

A mere application for insurance is not a contract of insurance, but when made out and forwarded to the insurer is only a proposition on the part of the applicant which must be accepted by the proposed insurer before it can become a contract of insurance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contract of Insurance.]

4. INSURANCE ⊚⇒92—AUTHORITY OF AGENTS —EVIDENCE.

In an action on a policy insuring against damage from hail, evidence held sufficient to authorize a finding that the insurer's soliciting agent had authority to contract with the applicant that the insurance should be effective 24 hours after being wired to the insurer's state agency.

5. INSURANCE ⊚⇒130(1)—APPLICATION—PARTIAL ACCEPTANCE.

Where an application for insurance stating that it was to be effective from the day the application was accepted and approved by the insurer's state agency was accepted by the insurer's soliciting agent under the agreement or understanding that the insurance should be effective 24 hours after the application was wired to the state agency, the insurer could not accept the application and reject this condition, but if it did not wish to accept the application on such condition because of the threatening weather, should have rejected the entire application.

6. EVIDENCE ⊚⇒441(13)—PAROL EVIDENCE TO VARY WRITING — CONTRACTS OF INSURANCE.

Where an insurer's state agency had expressly authorized soliciting agents to wire in applications, liability to begin 24 hours thereafter, evidence that an application was accepted by the soliciting agent under the agreement or understanding that it would be effective 24 hours after being so wired did not contradict the application asking for insurance from the day the application was accepted and approved at the state office.

7. INSURANCE ⊚⇒665(2)—COMMENCEMENT OF RISK—EVIDENCE.

In an action on an insurance policy, evidence held to warrant a finding that the insurance was solicited and obtained on the authority given the soliciting agent by the insurer's state agent to wire in applications, liability to commence 24 hours thereafter, and that there was an agreement to this effect based on such authority.

8. INSURANCE ⊚⇒143(6) — REFORMATION OF POLICY—GROUNDS—FRAUD OR MUTUAL MISTAKE.

Though, where an insurance application was accepted by a soliciting agent with the understanding that it would be wired to the insurer's state agency, and that the insurance should be effective 24 hours later, the state agent could not accept the application and postdate the contract, but if unwilling to accept it was bound to reject it in toto, the policy as issued commencing the insurance more than 24 hours after the application was wired in could not be corrected except for fraud or mutual mistake, since as issued it evidenced that the proposition made was not assented to, and that no agreement was ever reached.

9. REFORMATION OF INSTRUMENTS ⊚⇒30 — FORM OF REMEDY—NECESSITY OF INDEPENDENT SUIT.

It was not necessary to bring an independent suit to reform the contract, but if properly alleged and proved, recovery could be had on the contract as it should have been.

Appeal from Motley County Court; A. B. Crane, Judge.

Action by J. K. Patrick against the National Union Fire Insurance Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Dedmon, Potter & Pinney and H. A. Turner, all of Ft. Worth, for appellant. Bouldin & Surles, of Matador, for appellee.

HUFF, C. J. J. K. Patrick, appellee, instituted suit against appellant insurance company, and by his first amended original petition alleges substantially that on June 24, 1916, appellant insurance company entered into a contract with appellee to insure, and did insure, 25 acres of cotton against damage by hail; that on the above date the insurance company presented an instrument termed by the company an application for insurance, which was executed by the parties, wherein the company agreed to issue a policy of insurance on the cotton; that at the time the contract was entered into appellee, through its agent, agreed to wire the application in to the office at Ft. Worth on that day, and that the insurance should go into effect immediately after it was wired into the office at Ft. Worth, and that the insurance would be in full force and effect on the cotton for $500 from the 24th day of June, 1916, until the 1st day of October, 1916; that he verily believes that the agent did wire the application into appellant's office at Ft. Worth, as he agreed to do, and he alleges that a policy was issued for the full amount of $500, and delivered to him, "a copy of which is attached to plaintiff's original petition filed herein and marked Exhibit A, to which reference is here especially made for the contents of said policy and its agreements and covenants therein set out; that the defendant, instead of dating said policy on the 24th day of June, 1916, as it agreed to do, dated said policy on the 27th day of June, 1916"; that the application was in the possession of the company, and for that reason its contents could not be given. The company was notified to produce it in court at the trial, or secondary evidence would be offered. It was further alleged that the cotton was destroyed by hail June 26, 1916, asking for the face of the policy and interest. We will not set out the

other pleadings in this case, as they will not in any way affect the conclusion we have reached.

The case was tried before the trial court without a jury. The facts may be stated generally that appellant had a general agency at Ft. Worth, Tex., K. T. Martin & Co., whose authority was to accept or reject applications for insurance and to issue policies therefor. Martin testified he received the application June 27, 1916, and that it was on that day that he issued it and mailed the same to the appellee. The policy, as testified to by the parties and as pleaded by all of them, shows that it was issued on the 27th of June, and that it was effective from 12 o'clock noon of that day. The appellee, or the appellant, did not offer the policy in evidence, but without objection all the witnesses treat it as of that date, and being effective as insurance from that time; and both parties in effect pleaded such was the effect of the policy. We shall therefore consider the policy on that issue as properly before the court. The cotton insured was destroyed June 26, 1916, in the afternoon about 4 o'clock, the day before the policy was issued or dated. On the 24th day of June, 1916, Oscar Vinson took Patrick's application for the insurance, and he testified:

"I remember taking the application of the plaintiff, J. K. Patrick, on the 24th day of June, 1916, at Flomot, in Motley county. He was living on the E. A. Preston farm. The amount of insurance was $500, and the policy was taken to cover at the rate of $20 per acre. I took Mr. Patrick's application up to Lockney to be wired in that night, and I told Mr. Patrick that I would wire it in myself, and as I understood it it would take effect 24 hours after being wired into the office at Ft. Worth. I got this understanding from Meriwether Bros., and from a letter shown me by them. The letter you show me is the letter written Meriwether Bros., which I read: 'National Fire Insurance Co. of Pittsburg, Pa. K. T. Martin & Co., State Agents, Hail Department. Ft. Worth, Texas, June 17, 1917 [1916?]. Messrs. Meriwether Brothers, Lockney, Texas—Gentlemen: I have had instructions from the company not to bind any more application by wire immediately upon receipt of the wire, however, I will put the application into effect in 24 hours after I receive a wire, if that will be any advantage to you. In most of the territory the agent can mail an application in the evening, and it reaches our office the next morning, at which time the insurance goes into effect, but of course you are out on a branch road and it takes the mail longer to get from Lockney to Ft. Worth than it would ordinarily any place else. Thanking you very much for the business that you have given us, I beg to remain, Yours very truly, [Signed] K. T. Martin, State Agts.'"

Vinson wrote hail insurance for appellant company, and testified he had authority only from Meriwether Bros., of Lockney, Tex., who are local agents at that place for appellant. Robt. L. Forrest, an adjuster for appellant, during the year 1916 was in Meriwether Bros.' office at Lockney June 24, 1916. In his testimony he states that Meriwether Bros. made report of the applications received that day, among which was appel-

lee's application. This report was made by letter of that date. Their office was in Lockney, Floyd county. This witness further testified:

That he phoned in to Martin & Co. at Ft. Worth the application of Patrick and one Cain, from Plainview, on the 24th day of June, 1916, after he reached that place from Lockney. That he was in the office of Meriwether Bros., and in discussing other matters with them made mention that he was going to communicate with the Ft. Worth office by phone, when they informed him they had some applications which they were preparing to wire in, and asked if he would not save them the expense, "and when I phoned Mr. Martin to also phone the letter which they had then prepared, showing the name and amount in each policy, number of acres covered, and where located. This I agreed to do, but stated at the time to Geo. T. Meriwether, of the firm of Meriwether Bros., that on account of weather conditions which then existed I would recommend to the office that no policies be issued until the application reached the office, because it then looked like it might hail at any minute. On reaching Plainview that night, I communicated with Mr. Martin over telephone concerning the various items of business, and did read to him the message given to me by Geo. T. Meriwether, of Meriwether Bros., and also told him the clouds were hanging low, and it looked as if it might hail any minute, and that I thought it would be very improper to bind any policy until such time as the applications could reach the office and be approved in the usual manner. Mr. Martin stated to me that he would not bind any application until they were received at the office in Ft. Worth in the usual way."

F. T. Day, of Waseca, Minn., testified that his business was writing hail insurance, managing agents, writing insurance, and general manager of the hail department if appellant during the year 1916. He was permitted to testify, without objection:

"The date of the policy issued to the plaintiff in this case is June 27, A. D. 1916, and under its terms became effective at 12 o'clock noon on that date. The language of the application inquired about in this interrogatory is as follows: 'I, J. K. Patrick, of Flomot, O. O., R. F. D. ——, county of Motley, state of Texas, hereby make application for insurance upon growing cotton against damage by hail, only, for the season of 1916, to the amount of $500.00, from the day this application is accepted and approved at the state office of the hail department of the National Union Fire Insurance Company, at Ft. Worth, Texas, at 12 o'clock noon, standard time until October 1, 1916, standard time, where property is located, and in no event shall the company be liable after the insured's cotton is picked on the following described property.' Then follows a description of the property and other provisions in reference to the insurance, not material here."

The appellee testified:

"At the time I gave Mr. Vinson the application he told me he would have it wired in, and as he understood it it would take effect 24 hours after being wired into the office at Ft. Worth."

Assignments 1, 2, and 3 all assail the judgment of the court because the evidence does not support it. (1) That it appears from the pleadings that the policy to be valid must first be countersigned by the agent of the company at Ft. Worth, Tex., and that it was not signed until June 27, 1916. (2) The evidence is uncontroverted that there was no

contract of insurance prior to the loss. (3) That the application was made June 24th, crop destroyed June 26th, and the policy issued June 27th, effective from that date until October 1, 1916. (4) And there was no effort to reform the policy, and the suit was filed as upon the written policy, and the judgment should therefore have been rendered for appellant.

[1-3] The appellee makes certain objections to the assignments, which, if they are good, would not affect the disposition of this appeal for the reason that if the errors complained of should be sustained they are fundamental. The general proposition may be true, as stated by appellee, that an oral contract of insurance will bind the insurer, but appellee did not declare on an oral contract of insurance. He shows that he made an application for insurance, which the soliciting agent took, and which was forwarded to the company's general agent at Ft. Worth, who was authorized to issue the policy, and who did issue it as of date June 27, 1916. This policy, according to all the evidence, was effective from 12 o'clock noon of that date. This was in writing, and it is conclusive evidence of the contract, unless impeached by fraud or mistake. The cotton insured was destroyed about 4 o'clock on the afternoon of June 26th, a day before the insurance was effective. Hence, under the policy, no liability was shown. The mere application for insurance is not a contract of insurance. When the application is made out and forwarded it has only attained to the dignity of a proposition on the part of the applicant, which must be accepted by the proposed insurer before it can become a contract of insurance. Merchants' & Bankers' etc., v. Parker, 190 S. W. 525, and authorities therein cited; Insurance Co. v. Rudolph, 45 Tex. 457; German Insurance Co. v. Daniels, 33 S. W. 549; Coker v. Atlas, etc., 31 S. W. 703; Insurance Co. v. Young, 23 Wall. 85, 23 L. Ed. 152; Dorman v. Insurance Co., 41 Okl. 509, 139 Pac. 262, 51 L. R. A. (N. S.) 873. There is no evidence that the insurance applied for should be effective from the date of the application. It is uncontradicted that the insurance was only effective from the day of acceptance by the Martin Company at Ft. Worth. All that may be said is that the general agent could have accepted when the application should be wired in, and that upon such agreement the appellee applied for the insurance, effective 24 hours after the application should be wired to the agency. The contract alleged and proven, and as executed, does not show it was so accepted, but on the contrary shows it was consummated on the 27th of June, and effective from 12 o'clock noon of that day.

[4, 5] However, the facts in this case under proper pleadings might have authorized the finding that the soliciting agent had authority to contract with the applicant that the insurance should be effective 24 hours after having been wired to the agent at Ft. Worth, and if the application was accepted under such agreement or understanding the company might be estopped from denying such a contract. Amarillo National Life Ins. Co. v. Brown, 166 S. W. 658. If when the application was phoned to the agent he then accepted the application he probably did so with the understanding that it was effective 24 hours thereafter. He could not make a contract of insurance by accepting part of the proposition and rejecting a part, but he should have rejected it as a whole, if he did not agree to the proposition. He could not for his company accept that which was beneficial to it and reject that which he considered an extra burden, but he must abide by the entire contract completed upon acceptance. If he did not wish to accept the application as made, with storm clouds hanging low, threatening hail, he should have rejected the entire application. The company ought not be permitted to retain the premium which was paid for a period of time for which it was applied without also being liable for the loss occurring during that time. Taber v. Eyler, 162 S. W. 490.

[6-9] It should be noted that this evidence would not contradict the application to the effect that the policy is effective from the day the application is accepted by the agency at Ft. Worth. The agency at Ft. Worth, according to their letter, had expressly authorized the soliciting agents to wire in applications because of their situation as to mail facilities, and that liability should begin 24 hours thereafter. The evidence might warrant the finding that this insurance was solicited and obtained on such authority and an agreement based thereon. If it was part of the contract, and so accepted, it should be enforced. The time was fixed for the commencement of liability, and the agent could not, after so accepting, postdate the contract; but, if he was unwilling to accept the contract, he should have rejected it in toto. What is here said is subject to the fundamental rule that there must be a mutual assent in order to make a contract of insurance. Hence, as the pleadings now stand, even if the soliciting agent procured the application upon the authority and agreement testified to the policy as issued evidences that the proposition as made was not assented to. In order to impeach a contract in writing or supply an omission or correct a recital to make it speak the agreement of the parties it is necessary to allege either fraud or mutual mistake in executing the contract. In this case it is simply alleged that it was the understanding when appellee made the application that the policy when issued should

be effective from the date of the application. The evidence offered on this point is that it should be effective 24 hours after the application should be wired to the agency. In other words, there is no allegation of facts constituting either mutual mistake or fraud in making the contract, or in issuing the policy, and such fact should be affirmatively so alleged in order to introduce all the agreement or to import into the contract the omitted provisions therefrom. Parker v. Allen, 33 Tex. Civ. App. 206, 76 S. W. 74; Dalton v. Dalton, 143 S. W. 241. As alleged, in effect it is asserted no agreement was ever reached. In order to set up the contract as made, that is, to protect the property from 24 hours after the application should be wired to the agency, it was necessary to allege and prove the policy omitted that term, and that it was fraudulently so omitted or fraudulently postdated, or that the same was done by the mutual mistake of the parties. But it was not necessary to bring an independent suit to reform the contract, but if properly alleged and proven in this case recovery could be had on the contract as it should have been. Insurance Co. v. Brannon, 99 Tex. 391, 89 S. W. 1057, 2 L. R. A. (N. S.) 548, 13 Ann. Cas. 1020; Alfalfa Lumber Co. v. Mudgett et al., No. 1243, this day handed down, 199 S. W. 337.

For the reasons above given, the judgment of the lower court is reversed, and the cause remanded.