**NEW YORK UNDERWRITERS v. DENSON.**

No. 14536—Opinion Filed Jan. 29, 1924.

Rehearing Denied June 24, 1924.

**1. Insurance—Fire Policy—Invalidity of Agreement to Attach Loss Payable Clause Without Mortgagor's Consent.**

A fire insurance policy is a personal contract with the insured, and does not run with the insured property; and where the insurer, at the request of the mortgagee, agrees, without the knowledge or consent of the insured mortgagor, to attach a loss payable clause to the policy of the insured, thereby substituting the mortgagee as payee in case of loss, such agreement is void as to the insured and his assignee.

**2. Same—Action by Mortgagee Against Insurance Company on Agreement—Issues.**

Where, in an action by a mortgagee against an insurance company to recover on an oral contract to attach a loss payable clause to a fire insurance policy issued to the mortgagor, the evidence was that the mortgagee notified the agent of the company that he held a mortgage on the insured personal property and asked the agent to protect his interest, and the agent agreed to do so, and no particular form of contract was mentioned, it was a question of fact for the jury, under proper instructions, to determine whether, by such agreement, it was the intention of the parties that the words "loss if any, payable to the mortgagee as his interest may appear at time of loss", or words of similar import, should be attached to the policy of the insured.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Garvin County: W. L. Eagleton, Judge.

Action by G. E. Denson against New York Underwriters, a corporation. Judgment for plaintiff, and defendant appeals. Reversed.

Rittenhouse & Rittenhouse, John F. Webster, and H. G. Butts, for plaintiff in error.

Bowling & Farmer, for defendant in error.

Opinion by RAY, C. J. B. Pyle, tenant on the farm of G. E. Denson for 1921, mortgaged his growing broom corn crop to Denson to secure payment of $300. The mortgage contained no provision requiring the mortgagor to keep the mortgagee's interest insured. After the crop was harvested, the New York Underwriters, through its local agent, who was also cashier of the First State Bank of Maysville, issued to Pyle its fire insurance policy on the broom corn for $400 for a period of 30 days, and received from Pyle the cash premium of $4.40. The broom corn was destroyed by fire while the policy was in force. About the time of the fire Pyle assigned the policy to the bank to be applied upon his indebtedness to the bank. Denson, the mortgagee, claiming that the policy contained a loss payable clause, attempted to collect the loss, but the company denied liability to him and settled the loss with the bank for $259.88, and took up the policy and the assignment. Denson brought suit against Pyle, the bank, and the insurance company, alleging that at the time the policy was issued he had entered into an oral contract with the local agent whereby the agent had agreed to protect his interest as mortgagee by attaching a loss payable clause to the policy, and that the bank and the company had conspired together to settle the loss for less than full amount of the loss. Pyle was not served, a demurrer to plaintiff's evidence was sustained as to the bank, and judgment was against the insurance company for $300 and interest. The evidence as to the oral contract was conflicting. Denson testified that before the fire, and about the time the policy was issued, he notified the local agent that he held a mortgage on the broom corn and asked him to protect his interest, which the agent agreed to do; that he knew nothing about the insurance business but that the agent had agreed to protect him, and he had relied upon it. The agent denied the agreement and denied that they ever had any conversation concerning the matter. Upon this evidence it is contended that Denson had a binding contract with the company to attach to the policy a loss payable clause upon which he was entitled to recover. There was no evidence that Pyle, the mortgagor, was a party to the agreement or had any knowledge of it, but on the contrary it is contended that his consent was not necessary. There was some evidence which would tend to show that after loss Pyle cooperated to some extent with Denson in his attempt to collect from the company and which, it is contended, was a ratification of the agreement between Denson and the local agent. We think this was sufficient evidence to go to the jury under proper instructions, but the court committed reversible error in his instructions.

"Instruction No. 3. The law is that an insurance company is liable for any loss of property contained in the insurance policy to a party who claims and satisfactorily shows to the minds of the jury that the agent of said insurance company agreed to protect that party as against any loss which can only be done by what is known in law as a mortgage loss clause. This is true even

though the ordinary and usual form of mortgage loss clause is not filled out, provided the agent agreed to so protect the party claiming an interest in said property by reason of a chattel mortgage and said party relied upon said promise and agreement and the agent failed to so fill it out under said agreement.

"Instruction No. 4. The burden of proof in this case is on the plaintiff to establish every material allegation as set forth in his amended petition and in this connection you are instructed that under the admissions in this case there is only one issue of fact for you to consider and that is whether or not S. L. Thompson, agent of the New York Underwriters, was informed at the time or after the issuance of the insurance policy sued on in this case and prior to the alleged loss, that the plaintiff had a chattel mortgage covering the property or at least a part of the property insured and at said time the agent promised to protect the plaintiff in said policy so far as his interest might appear and that the plaintiff relied upon said promise, and you are therefore instructed that if you find that said promise was so made by a preponderance of the evidence, and relied upon, then you will return a verdict in this case in favor of the plaintiff and against the defendant, New York Underwriters, for such sum as you may find from the evidence, under these instructions, the plaintiff is entitled to recover, with interest on said amount from the first day of October, 1921, at the rate of six per cent. per annum."

While it is contended for the mortgagee that by the oral contract the company agreed to attach to the policy a loss payable clause, "Loss, if any, payable to the mortgagee as his interest may appear at time of loss", or words of similar import, the authorities cited to sustain the instructions are where the mortgagee clause was under consideration or where the mortgage contained a covenant of insurance. The distinction between the two clauses is clearly pointed out in Fidelity-Phoenix Fire Ins. Co. v. Cleveland, 57 Okla. 237, 156 Pac. 638, where it was said:

"That clause, that 'the loss, if any, shall be payable to the mortgagee as his interest may appear, at the time of the loss,' or words of similar import, where no other stipulation appears, defining the interest of the mortgagee, it has been generally held, creates a contract as to the mortgagee, which is merely collateral to the principal undertaking to pay the mortgagor, and the mortgagee is merely an appointee of the fund, with rights dependent upon, and no greater than, those of the insured. In such case, if the policy becomes void, so that it cannot be collected by the insured, the rights of the mortgagee likewise fall. Warbasse v. Sussex County Mut. Ins. Co., 42 N. J. Law, 203; Grosvenor v. Atlantic Fire Ins. Co., 17 N. Y. 391; Hamburg-Bremen Fire Ins. Co. v. Ruddell, 37 Tex. Civ. App. 30, 82 S. W. 826. See, also, for large list of cases, note to Brecht v. Law Union & Crown Ins. Co. 18 L. R. A. (N. S.) 197.

"However, under the clause involved here (mortgage clause), it has been almost unanimously held that such clause creates an independent contract of insurance for the separate protection and benefit of the mortgagee."

The instructions complained of appear to have been given upon the theory that the mortgagor had no insurable interest in the property or that he was in some way obligated to protect the insurable interest of the mortgagee and that his consent was not necessary to a change of the payee in the policy. The text in 18 Cyc. 885, appears to be generally recognized as a correct statement of the law:

"As the mortgagor and mortgagee, each has an insurable interest in mortgaged property, insurance taken by one on his own interest does not in any way inure to the benefit of the other.

"The mortgagee is not entitled to any advantage of other insurance not taken for his benefit."

It is a well-established principle that a policy is a personal contract with the insured and does not run with the insured property. 26 Corpus Juris, 130. For that reason it has usually been held that the insured cannot assign a fire insurance policy, in advance of the loss, without the consent of the insurer. For the same reason, the insurer cannot by contract or agreement assign or transfer the rights of the insured without his consent. To attach a loss payable clause is, in effect, to designate another than the insured as the party to whom the loss, if any, shall be paid, and that cannot be done without the consent of the insured. For these reasons we think the court erred in instructing the jury, in substance, that the only question for the jury to consider was whether the plaintiff and the local agent had entered into the agreement as testified by the plaintiff. It was for the jury to say whether the insured authorized the insurer to make the agreement. As the mortgagee had an insurable interest in the property, and no particular form of insurance contract was designated in the agreement, it was for the jury, and not for the court, to determine whether it was the intention of the parties to attach a loss payable clause to the policy of the insured.

The judgment should be reversed, with di

rections to grant the defendant a new trial.

By the Court: It is so ordered.