## NIAGARA FIRE INS. CO. v. AEBISCHER.

No. 22546. Nov. 27, 1934.

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiff in error.

W. B. Garrett and Perry Powers, for defendant in error.

PER CURIAM. This is a suit on a fire insurance policy brought by A. Aebischer against the Niagara Fire Insurance Company. The parties herein will be designated as in the lower court. The facts are as follows:

On June 4, 1925, the Niagara Fire Insurance Company issued to one Bertie Johnson a fire insurance policy for the term of five years from said date, in consideration of a cash premium payment of $15.84 and the execution and delivery of an installment note of $63.36, payable in annual installments of $15.84 on the 1st day of July, 1926, 1927, 1928, 1929. The policy covered the dwelling of one Bertie Johnson and certain outbuildings located on certain farm lands in Greer county, Okla. The insurance was solicited by one O. W. Talley, residing at Hobart, Okla., who was at the time of its issuance a soliciting agent for the insurance company. The first installment payment on the premium note was not paid on July 1, 1926, when due, and the insurance company thereupon elected to cancel the policy, in accordance with its provisions, and so notified the insured, Bertie Johnson, by registered letter, dated August 11, 1926, receiving a receipt through the United States mail acknowledging its delivery. In this letter the insurance company returned the installment note previously executed by the insured, Bertie Johnson. Thereafter, on August 26, 1926, the insurance company received from Bertie Johnson a check for $15.84, tendered as a payment on said installment note due July 1, 1926, but on August 27, 1926, returned the check to Bertie Johnson at the address mentioned in the policy, again advising him that the policy had been canceled, in accordance with its provisions and the provisions of the installment note. At the time of the issuance of the policy a loan had been made on the farm by the Federal Land Bank of Wichita, Kan., and this policy of insurance was at the time of its cancellation in the possession of the bank. The bank was advised of the cancellation of the policy, and thereupon surrendered the policy to the insurance company, enclosing it in a letter dated August 25, 1926. On September 26, 1927, the agency contract of O. W. Talley with the insurance company was terminated. Shortly before April 5, 1928, Bertie Johnson conveyed his farm to the plaintiff below, A. Aebischer, and on that date both the grantor and the grantee in that deed appeared at the office of the former agent of the insurance company and executed an application for the assignment of the fire insurance policy theretofore canceled. About these facts there is no dispute in the record. The insured, Bertie Johnson, was not produced as a witness. The former agent, O. W. Talley, testified in this case for the plaintiff that he enclosed the application for assignment of the insurance policy in an envelope addressed to the insurance company, and placed it with the outgoing mail of his office. Its receipt was denied by the insurance company, and no written consent to the assignment of the policy was produced. Thereafter, upon notice from the former agent, Talley, the plaintiff, Aebischer, delivered to him a check in the sum of $15.84, covering one year's premium on the policy, and this check was forwarded by mail on August 1, 1928, to the insurance company, and its receipt acknowledged in a letter written by the insurance company to O. W. Talley, and dated August 30, 1928. In this letter the insurance company called attention to the fact that the policy had been theretofore canceled, and claimed it returned the check to O. W. Tal-

ley. Talley had no recollection of the return of the check. The canceled check was not produced in evidence, but the wife of the plaintiff testified it had been paid by the First National Bank of Granite, Okla., upon which it was drawn, and that the check was returned to her with her other canceled checks at the end of August, 1928, and was destroyed by the fire destroying the building. The records of the First National Bank of Granite, Okla., disclosed no check in the exact amount of $15.84 paid during the year 1928, but a payment was made on September 26, 1928, in the sum of $15.75. The wife of the plaintiff then testified that the bank's records were erroneous as to the amount of this item. The insurance policy contained a provision that "if this policy shall be assigned without written consent hereon, * * * then in each and every one of the above cases this policy shall be null and void." The dwelling covered by the policy mentioned above was totally destroyed by fire on February 22, 1929. Thereupon suit was filed by the plaintiff on the policy, and resulted in a judgment against the defendant for the sum of $900 the coverage on the dwelling, provided in the policy. From that judgment this appeal is prosecuted.

1, 2. Naturally there could be no recovery by the plaintiff in the absence of a showing on his part of a contract of insurance between the plaintiff and the defendant. The essential elements of an insurance contract are no different from those of any other contract. In order to constitute a valid and binding contract of insurance, there must be a meeting of the minds of the contracting parties upon all the material terms and provisions of the contract. Etenburn v. Metropolitan Life Insurance Co., 118 Okla. 55, 246 P. 385; Shawnee Mutual Fire Insurance Co. v. McClure et al., 39 Okla. 535, 135 P. 1150; McCracken v. Travelers' Insurance Co., 57 Okla. 284, 156 P. 640; Dorman v. Connecticut Fire Insurance Co., 41 Okla. 509, 139 P. 262.

In the case of Dorman v. Connecticut Fire Insurance Co., supra, the court said:

"A contract of insurance consists of an agreement between the insured and the insurer, including the following elements: (1) The subject-matter; (2) the risk insured against; (3) the amount; (4) the period of the risk; and (5) the premium. And there is no contract until the minds of the parties meet in these respects."

And further in that case it was said:

"An application for insurance is not itself a contract, but is a mere proposal, which requires acceptance by the insurer through someone actually or apparently authorized to accept the same to give it effect as a contract. * * * Nor does the mere retention of both application and the premium, without any action thereon, constitute a contract of insurance. Van Arsdale-Osborne v. Young, 21 Okla. 151, 95 P. 778; N. W. Mutual Life Insurance Co. v. Neafus, 145 Ky. 563, 140 S. W. 1026, 36 L. R. A. (N. S.) 1211; 1 Law of Insurance by Charles Beach, Jr., 499; 1 May on Insurance, sec. 43 H."

The record discloses that the plaintiff and the insured, Bertie Johnson, executed an application for transfer of the policy sued on. That application was placed in the outgoing office mail of the former agent, O. W. Talley, in an envelope addressed to the home office of the insurance company at Indianapolis, Ind. Its receipt by the insurance company was denied. However, the sending of the application, in view of the fact the policy was canceled, at most, would only operate as a proposal by the plaintiff that the company issue an insurance policy on the property conveyed to him on the same terms and conditions named in the policy issued to Bertie Johnson. An acceptance was required before that offer became a binding contract.

In the case of McCracken v. Travelers' Insurance Co., supra, the court said:

"In order to fix liability upon the company in this instance, it was necessary that the evidence should show that a contract was made; that there was a 'meeting of the minds' of the parties; that is, that McCracken applied for a certain kind of policy for a definite term for a specified premium, and that the company accepted this application, i. e., agreed to issue the policy applied for. It is made to appear that such an application was made, but it does not appear the company accepted this application, or that there was a meeting of the minds, and that a contract of insurance was made."

In the case of Shawnee Mutual Fire Insurance Co. v. McClure, supra, the second paragraph of the syllabus reads:

"The making of an application for insurance subject to the approval or rejection of the company to which it is made, is merely a step in the creation of a contract to insure. When the application is made out and forwarded to the company, it is not yet a contract of insurance; it has then only attained the position of a proposition on one side. It requires an acceptance by the other side before it can be said that the minds of the parties have met upon the terms of a contract to insure."

In the case of St. Paul Fire & Marine Ins. Co. v. Ruddy, 299 Fed. 189, it was held:

"A purchaser of insured property advised the insurer by letter of the purchase and inquired about the terms and date of the expiration of the policy. The reply gave the information and stated that, if he wished the insurance transferred, he should have the policy assigned, and forwarded and 'we will consent to the transfer.' Nothing further was done though two months elapsed before the property was destroyed, and the purchaser did not have or see the policy until after the loss. Held, that no contract was made between the insurer and purchaser which effected a transfer of the policy."

If the application for transfer of the Bertie Johnson policy is treated as plaintiff's application for insurance (and in view of the prior cancellation of the Bertie Johnson policy, we think it should be so treated), the record fails to disclose the proposal was accepted, and, consequently, there was no contract in existence between the plaintiff and the defendant at the time of the loss in question.

The trial court, submitting the case to the jury, informed them that if the former agent of the insurance company informed the plaintiff the policy had been assigned, and if the insurance company was notified of the assignment from Bertie Johnson to the plaintiff, and with this knowledge received from the plaintiff a check for $15.84 as the premium upon the policy; and if the insurance company kept the check and assignment without notifying the plaintiff that it declined to re-issue the policy, cashed the check, and appropriated the proceeds, then their verdict should be for the plaintiff. In other words, the court's theory was that mere silence on the part of the insurance company with respect to the assignment of the policy would operate as an acceptance of the proposal to assign the policy, rendering the contract binding upon it, especially where it kept the premium tendered.

In the case of Nieman v. Hawkeye Securities Fire Insurance Co. (Iowa) 215 N. W. 244, it was held:

"Mere notice to insurance company of change of ownership of insured property or of assignment of fire insurance policy thereon does not create a new contract between the insurer and assignee so as to make insurer liable on policy.

"Policy is a personal contract, the insured issuing it having right to say whom it will insure, and does not run with land nor pass to purchaser by sale of property insured."

We hold that the mere knowledge on the part of the insurance company of the execution by the plaintiff and the insured of an application for the assignment of the policy and the retention of the premium tendered are not in themselves sufficient to create a binding contract between the plaintiff and the defendant. There was not a meeting of the minds of the contracting parties on all of the essential terms of the contract to insure. The result might be different if it were not an established fact in the case that the policy of insurance sought to be assigned was in fact a nullity, because it had been canceled and surrendered practically two years previously.

3. It is elementary that a fire insurance policy is a personal contract with the party insured. It does not pass to the purchaser by the sale of the property insured, and if the policy permits its assignment, provided the insurer consents in writing, that method must be pursued, because the insurer has a right to select his risks. New England Loan & Trust Co. v. Kenneally (Neb.) 57 N. W. 759; Strong v. Moore (Ore.) 245 P. 505; Bartling v. German Mut. Lightning & Tornado Ins. Co. (Iowa) 134 N. W. 864; Davis v. Bremer County Farm Mut. Life Ins. Ass'n (Iowa) 134 N. W. 860; N. Y. Underwriters v. Denson, 100 Okla. 89, 227 P. 122; Neiman v. Hawkeye Securities Fire Insurance Co. (Iowa) 215 N. W. 244.

4. The cases relied upon by the plaintiff all refer to conduct of the insurer constituting waiver of conditions permitting forfeitures in an existing contract, or estoppel to rely upon breaches of an existing contract, which would permit voiding it. Here we have a different question altogether. There was in existence no contract of insurance when Bertie Johnson and the plaintiff executed the application for the transfer of the policy previously issued. The plaintiff, under these circumstances, in order to recover, must necessarily show that he entered into a new contract with the defendant before there can be a recovery. Certain it is he cannot recover on the policy issued to Bertie Johnson, which had been canceled 20 months previously and surrendered to the company and in its possession at the time the suit was filed and at the time of the execution of the application for its transfer. There being no contract, there was nothing upon which to raise the edifice of estoppel by the retention of a sum paid as a premium on the policy. If the insurance company retained that sum, it might be liable for its return on the basis

of monies had and received; but we cannot see under this record why its mere retention, if it was retained, could give rise to a contract obligation requiring the company to pay $900 for the destruction of plaintiff's property. We reiterate, in order for the waiver and estoppel to operate, there must be shown an existing policy of insurance. Possibly plaintiff relied on the former agent, Talley, and did believe his property covered by the Johnson policy, but this belief could not make the contract. Talley at the time the assignment was attempted was not even a soliciting agent of the insurance company.

It follows from the views expressed herein that the trial court should have sustained the motion of the defendant for a directed verdict.

The case is reversed, with directions that the plaintiff's petition be dismissed.

The Supreme Court acknowledges the aid of Attorneys E. R. Jones, C. P. Gotwals, and Irwin Donovan in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Jones, and approved by Mr. Gotwals and Mr. Donovan, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.