**AMERICAN ALLIANCE INSURANCE COMPANY OF NEW YORK,**
Plaintiff in Error,

v.

**R. D. McCALLIE, Defendant in Error.**

No. 37694.

Supreme Court of Oklahoma.

Dec. 10, 1957.

Hanson & Green, Oklahoma City, by Wm. L. Peterson, Jr., Oklahoma City, for plaintiff in error.

Woodford & Ballinger, Holdenville, for defendant in error.

BLACKBIRD, Justice.

██ This action was instituted in the trial court by defendant in error, hereinafter referred to as plaintiff, against plaintiff in error, as defendant, and another insurance company, to recover the alleged value of his automobile, previously destroyed by fire and allegedly insured against this hazard through insurance policies issued by said companies. There has never been any question as to plaintiff's loss, or the extent thereof, the only issue here being whether or not, under the circumstances hereinafter related, said loss was covered by the policy plaintiff in error issued.

The automobile involved first belonged to plaintiff. On March 3, 1952, he sold it to one Marvin Williams, who paid him a part of the purchase price as a "down payment", and borrowed the remainder from a Wetumka, Oklahoma, bank. To obtain the bank president's approval of the loan, plaintiff co-signed Williams' promissory note therefor, and Williams gave the bank a chattel mortgage on the car, as security for its payment. On the same day, Williams obtained on the car, the policy of so-called "Automobile Insurance" here involved from a Mr. Peixotto, who was plaintiff in error's local agent. Payment for loss, or damage, to the car by fire was prescribed by "Coverage F" of the policy's "Insuring Agreements"; and, under "Exclusions", paragraph "(h)", it provided that this (and some of the other "Coverages") did not apply "(1) while the automobile is subject to any * * * mortgage or other encumbrance not specifically detailed and described in the policy; * * *". Executed and attached to the policy by plaintiff in error's aforesaid agent, was a "Loss Payable Clause" providing, among other things, that loss or damage, if any, under

the policy should be payable "* * * as interest may appear to * * *" the aforementioned bank, "Lienholder". Said clause further provided, among other things, that it "shall not be invalidated * * * by any change in the title or ownership" of the car, but it prescribed that the lienholder notify the insurer "of any change of ownership or increase of hazard which shall come to the knowledge of said lienholder, and, unless permitted by such policy, it shall be noted therein and the Lienholder shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise such policy shall be null and void."

A few months thereafter, Williams defaulted in his payments to the bank, which notified plaintiff. Plaintiff then contacted Williams by long distance telephone and, pursuant to an agreement the two then reached, Williams surrendered to plaintiff, the auto, the certificate of title thereto, and the aforesaid insurance policy thereon. Later, plaintiff obtained from the Oklahoma Tax Commission a new certificate showing title to the car in him. After using the car a short time, plaintiff paid the entire balance due on Williams' aforesaid note to the bank by negotiating, for himself, a larger loan from it, secured by a mortgage on the car and some other chattels. At that time, he executed an application for insurance on the car to be issued by another company called the "Commercial Union Assurance Co., Ltd." (for which the bank president was local agent) and paid the first premium due thereon by allowing the amount thereof to be included in the amount of the promissory note evidencing this new loan.

On February 23, 1953, when the auto burned, plaintiff in error had never been notified that the ownership of the car had been transferred from its insured, Marvin Williams, to plaintiff; but the next day, February 24, when plaintiff went to the office of plaintiff in error's aforenamed local agent to obtain the policy's assignment to him, he apprised the agent of this change in ownership; but did not tell him

the car had burned. He did so apprise the agent, however, the next day, February 25th.

When plaintiff thereafter called upon plaintiff in error to pay for the fire loss, the latter denied liability; and plaintiff instituted the present action on both of the aforementioned policies.

At the trial, without a jury, the policy plaintiff introduced in evidence (as the one plaintiff in error had issued Marvin Williams on the car) had attached to it, as one of its riders, an "Assignment Of Interest" said company's agent, Mr. Peixotto, had filled out and endorsed as said company's "Resident Licensed Agent" on the occasion of plaintiff's hereinbefore mentioned visit to said agent's office on February 24, 1953. Both the assignment and endorsement were dated one week prior thereto, or February 17, 1953, which apparently was the date plaintiff told Peixotto he had succeeded to Williams' ownership, or interest in, the car. When queried on the witness stand concerning this difference in dates, plaintiff testified, in substance, that he didn't remember the date of his visit to Peixotto's office, and the attachment of the rider, but readily admitted that it was antedated, or, in other words, that the date caused to be placed thereon was prior in time to the burning of the car; and it was never claimed that the agent Peixotto or his company knew, or had any information, of this.

After all the evidence was in, each of the insurance companies demurred thereto and moved for judgment, plaintiff in error's demurrer and motion being upon the specific ground that, according to the undisputed evidence, the auto burned previous to the date there was any contract of insurance in existence between it and the plaintiff. The trial court overruled these demurrers and motions and entered judgment granting plaintiff a total recovery of $900, making each of the insurance companies liable for one-half of said amount, except that Commercial Union Insurance Company's one-half share was reduced by the amount of the premium plaintiff had paid, as aforesaid, but which "payment" had later been cancelled by credit on his bank note. Only the plaintiff in error, American Alliance Insurance Company of New York, filed a motion for a new trial or participated in the perfection of the present appeal. It will hereinafter be referred to merely as "defendant".

■ Under the first proposition defendant urges for reversal, it still maintains, in substance, that since on February 23, the date the auto burned, Marvin Williams was the named insured under its policy, plaintiff cannot enforce, nor recover upon, same. In this connection, defendant further contends that under the policy's provision that an assignment thereof "* * * shall not bind the company until its consent is endorsed thereon; * * *" the hereinbefore described rider entitled "Assignment Of Interest", with its purported "endorsement", was of no force and effect, because, under the undisputed evidence, on the date said rider was actually executed, the car had already burned and said insured auto, or subject of the policy, was no longer in existence. We think this proposition is sound and controlling in the matter. It seems to be the rule, followed by most courts, that where such a policy is in force and effect at the time the insured property burns, by the happening of the latter event, the relationship between the insurer and the insured becomes simply that of debtor and creditor; and that the chose in action, which the latter then has against the former, may be validly transferred to a third person, by assignment, without compliance with the policy's requirement that the insurer's consent thereto (by endorsement or otherwise) be obtained. See Alkan v. New Hampshire Ins. Co., 53 Wis. 136, 144, 10 N.W. 91, 95, and other cases cited in the Annotations at 122 A.L.R. 144, and 56 A.L.R. 139; Davis v. Bremer County Farmer's M. F. Ins. Ass'n, 154 Iowa 326, 134 N.W. 860, 862; and other cases cited in the footnotes to Appleman "Insurance Law and Practice", Vol. 5, sec. 3458, 29 Am.Jur., "Insurance", sec. 505, and 45 C.J.S. Insurance § 574 b. We know of no case, however, holding such an assignment valid where, on the date of the loss by fire, the claimed "assignor"

had no insurable interest in the property thus destroyed. In Niagara Fire Ins. Co. v. Aebischer, 169 Okl. 551, 44 P.2d 5, 8, this court said:

"It is elementary that a fire insurance policy is a personal contract with the party insured. It does not pass to the purchaser by the sale of the property insured, and, if the policy permits its assignment, provided the insurer consents in writing, *that method must* be pursued, because the insurer has a right to select his risks." (Emphasis ours.)

■ Plaintiff seeks to uphold the judgment, however, through the medium of the policy's "loss payable" clause. (And one remark the trial judge made about the time he rendered judgment indicates that he may have accorded that clause controlling significance.) In their argument, counsel attempt to apply to plaintiff's position, certain principles of suretyship and the equitable doctrine of subrogation. They argue that when plaintiff co-signed the note Williams executed to obtain the money from the bank, with which to buy the car in the first instance, he became a surety, just as Williams was a principal, as concerned that obligation; and that, when, upon Williams' default, the bank called upon plaintiff to see that the balance due on said note was paid, and he paid it, then he succeeded to the position of the bank, or mortgagee of the car, and could claim the protection against the car's loss, afforded by the loss payable clause. In support of this argument, counsel urge application, to plaintiff's claimed position, of Tit. 15 O.S.1951 § 383, which reads as follows:

"A surety is entitled to the benefit of every security for the performance of the principal obligation, held by the creditor or by a co-surety, at the time of entering into the contract of suretyship, or acquired by him afterwards, whether the surety was aware of the security or not."

Neither of the two cases, plaintiff's counsel cite, demonstrate that the principles of suretyship and/or subrogation discussed in them, or incorporated in the above-quoted statute, have any application to a situation like the one presented here. If plaintiff, at the time he paid Williams' debt to the bank, had taken from it an assignment of said debtor's note and mortgage (rather than extinguishing the mortgage lien and mortgagor-mortgagee relationship, to which Williams, as the insured owner of the car, was a party) and had notified the insurer, then there might be some merit to his argument and some ground for application of the principles he seeks to invoke. However, instead of, in such manner, preserving the mortgage lien, plaintiff, as hereinbefore noted, extinguished it, becoming the owner of the car himself, wiping out the Williams' obligation to the bank (as to which his counsel represents plaintiff as still a surety) and executing and delivering to the bank a new note and mortgage, in which he was the primary promissor and the mortgagor. Rather than merely succeeding (by assignment or otherwise) to the position of the bank in the Williams' mortgage transaction, plaintiff gave up his position as surety on Williams' previous obligation and substituted therefor a new and larger obligation, of his own, to the bank. Consequently, when the fire loss thereafter occurred, he was in no position to claim that, as successor to the bank mortgagee named in the loss payable clause, he was beyond the operation of the policy's assignment-endorsement requirement. The only case, that has come to our attention, recognizing any considerations to the contrary is an early New York Chancery case, Rogers v. Traders Ins. Co., 1837, 6 Paige 583, cited opposite Footnote 1, on page 600 of Appleman's work, supra. From an examination of the opinion therein, it is readily apparent that it is without application, in this jurisdiction, to a situation such as is here presented.

Having concluded that neither the insurance policy's purported assignment, nor its loss payable clause, could furnish plaintiff any basis for enforcement of any obligation by defendant to pay him any part of the fire loss involved herein, we hold that the trial court erred in overruling said defend-

ant's demurrer to the evidence and motion for judgment. Accordingly, said court's judgment is reversed, as to said defendant, and this cause is remanded to the trial court with instructions to modify it, in so far as it purports to grant plaintiff any recovery against said defendant.

CORN, V. C. J., and HALLEY, JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ., concur.