EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| San Luis Center Apartments, Almonet Ponce, LLC; Albors Property Corp., Attenure Holdings Trust II y HRH Property Holdings, LLC<br><br>Peticionarios<br><br>v.<br><br>Triple-S Propiedad, Inc.<br><br>Recurrida | 2022 TSPR 18<br><br>208 DPR ____ |

Número del Caso:  AC-2021-5


Fecha: 15 de febrero de 2022


Tribunal de Apelaciones:

	Panel I (DJ 2019-187C)


Abogados de la parte peticionaria:

	Lcdo. Luis E. Vivoni López
	Lcdo. Manuel A. Pietrantoni
	Lcda. Leny Marie Cáceres Vázquez


Abogado de la parte recurrida:

	Lcdo. Luis R. Román-Negrón


Abogado de la parte *Amicus Curiae*:

	Lcdo. Francisco J. González-Magáz



Materia:  Derecho de Seguros – Obligaciones y Contratos Validez de una cláusula anti-cesión en una póliza de seguro.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

San Luis Center Apartments,
Almonet Ponce, LLC; Albors
Property Corp., Attenure
Holdings Trust II y HRH
Property Holdings, LLC

     Peticionarios

       v.

Triple-S Propiedad, Inc.

     Recurrida

AC-2021-0005

Opinión del Tribunal emitida por el Juez Asociado señor Martínez Torres

En San Juan, Puerto Rico, a 15 de febrero de 2022.

Nos corresponde expresarnos por primera vez sobre la validez de cláusulas anti-cesión en pólizas de seguros. Específicamente, si la cláusula anti-cesión contenida en la póliza de seguros suscrita entre San Luis Center Apartments y Triple-S Propiedad, prohíbe la cesión posterior a la pérdida. Contestamos en la negativa.

**I**

Esta controversia tiene su génesis con el paso del Huracán María sobre Puerto Rico el 20 de septiembre de 2017. A raíz de los daños causados a la propiedad por el paso de este evento atmosférico, San Luis Center Apartments (San Luis), Almonet Ponce, LLC (Almonet),

Albors Property Corp. (Albors), Attenure Holdings Trust 11 (Attenure), y HRH Property Holding LLC (HRH)(en conjunto, Demandantes), presentaron una demanda sobre incumplimiento de contrato en contra de Triple-S Propiedad (Triple-S). En síntesis, alegaron que San Luis adquirió una póliza de seguro expedida por Triple-S para proteger un complejo de apartamentos localizado en la municipalidad de Ponce. A consecuencia del paso del Huracán María, la propiedad asegurada sufrió daños estimados en más de un millón de dólares. Por tal razón, San Luis reclamó los beneficios de la póliza suscrita con Triple-S. Sin embargo, debido al supuesto incumplimiento de Triple-S con su obligación, San Luis acordó con Attenure la cesión de parte de la reclamación contra Triple-S.

Attenure es un fideicomiso que provee asistencia en el manejo de reclamaciones contra aseguradoras. Su ofrecimiento consiste en un adelanto económico, no reembolsable, a la parte reclamante para que inicie las mejoras necesarias a su propiedad, mientras asumen la representación legal y costos de peritaje de la reclamación de la parte contra la aseguradora.

En respuesta, Triple-S presentó una *Moción de desestimación* en la que argumentó que Attenure no tenía legitimación activa. Al respecto, arguyó que la cesión de derechos y responsabilidades fue prohibida expresamente en la póliza suscrita por San Luis, debido a que la Cláusula F dispone lo siguiente:

**F. Transfer of Your Rights And Duties Under This Policy**

*Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured. [...]. Ap. Ap., pág. 118.*

Por lo tanto, Triple-S alegó que San Luis estaba impedido de presentar una reclamación en su contra, debido a que incurrieron en un incumplimiento al contrato de seguro. En cambio, los Demandantes argumentaron que la posición de Triple-S conllevaría una renuncia de sus beneficios. Añadieron que este tipo de contrato de cesión ha sido validado por distintos tribunales estatales. También expresaron que la cláusula en cuestión no era específica. Por lo tanto, debía interpretarse a su favor.

Con la comparecencia de las partes, el foro primario concluyó que la cláusula en controversia no aplica a los hechos de este caso, pues San Luis cedió su derecho a reclamar los daños ocasionados por el evento atmosférico, no así la póliza. Además, determinó que la cláusula no era suficientemente específica para delimitar a qué situaciones se extendía la prohibición de ceder los derechos y obligaciones de la póliza. Así, determinó que San Luis no incumplió el contrato de seguro y está en posición de reclamar ante el tribunal.

Inconforme, Triple-S presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. En síntesis, reiteró que el acuerdo entre San Luis y Attenure no es conforme a la cláusula de no cesión dispuesta en la póliza de seguro. Por tal razón, argumentó que correspondía la desestimación dado

a que Attenure no podía subrogarse en la posición de San Luis.

Entonces, el Tribunal de Apelaciones determinó que la cláusula prohíbe claramente "cualquier tipo de cesión de los derechos de un asegurado bajo una póliza a un tercero". Ap. Ap., pág. 154. Resolvió que, debido al texto expreso de la cláusula, la prohibición se mantiene inalterada sin importar cuándo ocurra la cesión, ya sea ante o posterior a la pérdida. En cuanto al efecto de la cesión en el riesgo de la póliza, el foro intermedio concluyó que ello era indiferente porque era una prohibición explícita. Por ello, sostuvo solamente la reclamación de San Luis, quien es el asegurado. El Juez Pagán Ocasio emitió un voto disidente en el cual expresó que "la mayoría de los tribunales [estatales] han resuelto que el lenguaje de las cláusulas anti-cesión no impide que el asegurado pueda ceder una reclamación post-pérdida". Ap. Ap., pág. 1473.

Insatisfecho con lo resuelto por el foro intermedio, los Demandantes acuden ante nos. Alegan que el foro intermedio erró al concluir que la Condición F de la Póliza prohíbe la cesión de un interés de una reclamación luego de ocurrida la pérdida. Además, alegan que el foro intermedio erró al concluir que Attenure y HRH carecen de legitimación activa y al entender que Triple-S tiene legitimación activa para impugnar el acuerdo de cesión. Por último, arguyen que el foro intermedio se equivoca al no reconocer la cláusula de separabilidad del acuerdo de cesión que sostiene la cesión

de ingresos y que el poder especial es un acuerdo separado e independiente del acuerdo de cesión.

De igual forma, compareció en calidad de Amigo de la Corte la "League of United Latin American Citizens-Puerto Rico" (LULAC)y arguyó que "existen motivos de peso para que este Honorable Tribunal, conforme al precedente legal mayoritario, determine que las cesiones como la del caso de marras son válidas y exigibles". Comparecencia como *Amicus curiae* del League of United Latin American Citizens-Puerto Rico en apoyo a los demandantes-recurridos, pág. 5.

Expedido como certiorari, por ser el recurso adecuado, y con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. El Contrato de Seguros en Puerto Rico

Generalmente se define el seguro como un contrato por el que una de las partes (conocida como Asegurador), a cambio de una contraprestación que suele pagarse en dinero, ya sea en una suma global o en diferentes momentos durante la duración del riesgo, se compromete a realizar un determinado pago, normalmente en dinero, en caso de destrucción o daño de algún bien en el que la otra parte (conocida como Asegurado) tiene un interés. 1 Plitt, Maldonado and Roger, Couch on Insurance, sec. 1.6. (2021). Por su parte, el Código de Seguros de Puerto Rico define un contrato de seguro como "un contrato mediante el cual una persona se obliga a indemnizar a otra o a proveerle un beneficio específico o

determinable al producirse un suceso incierto, previsto en el mismo". Art. 1 del Código de Seguros de Puerto Rico, 26 LPRA sec. 102.

Debido a la gama de actividades económicas en las cuales una persona se expone a lo largo de su vida, se han creado distintos tipos de seguros para atenuar los riesgos inherentes a cada actividad. Es así por lo que contamos con seguros de vida, salud, empleo y propiedad, entre otros. En particular, en la controversia ante nuestra consideración, las partes suscribieron un contrato de seguro de propiedad.

Puerto Rico cuenta con una industria de seguros vibrante, responsable de miles de empleos directos e indirectos. J. Nadal Ferrería, The International Insurance Center: Can Puerto Rico Become the New Vector in the Insurance Industry Triangle?, 3 U.P.R. Bus. L. J., 1, 3 (2012). Por el importante papel que juega esta industria en la protección de los riesgos que amenazan la vida o el patrimonio de los ciudadanos, hemos expresado que está investida de alto interés público. Rivera Matos et al. v. Triple S et al., 204 DPR 1010, 1019 (2020); R.J. Reynolds v. Vega Otero, 197 DPR 699, 706 (2017).

En el ámbito comercial, "el negocio de seguros se convierte en uno de los principales soportes que permite amortiguar los giros violentos de incertidumbre propios del mercado, aminora sus efectos y permite un crecimiento más estable de la economía". R.J. Reynolds v. Vega Otero, supra, pág. 707. Igual trascendencia tiene en el ámbito individual,

al proteger o amortiguar los riesgos que experimenta el ciudadano promedio, producto de las inclemencias del tiempo, accidentes y enfermedades, entre otros.

Ante esta realidad, la industria de seguros está extensamente reglamentada mediante la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el Código de Seguros de Puerto Rico, 26 LPRA sec. 101 et seq., y está sujeta de manera supletoria a las disposiciones del Código Civil. Íd.

Los términos que se encuentran en el contrato de seguros están contenidos en la póliza por escrito. Art. 11.140 del Código de Seguros, 26 LPRA sec. 1114(1). Hemos expresado que cuando nos corresponda interpretar las cláusulas de un contrato de seguro "el propio Código de Seguros pauta la norma que ha de regir nuestra función hermenéutica". R.J. Reynolds v. Vega Otero, supra, pág. 707. "A esos efectos, dispone que los contratos de seguro se interpretan globalmente, a base del conjunto total de sus términos y condiciones, según expuestos en la póliza …". Íd. Véase Art. 11.250 del Código de Seguros, 26 LPRA sec. 1125. Los términos de los contratos de seguro se rigen por las normas de interpretación aplicables a los contratos en general. 2 Plitt, Maldonado and Roger, supra, sec. 22.1. esc. 1 ("Insurance policies are controlled by the rules of construction that are applicable to contracts generally").

A esos efectos, nuestro Código Civil dispone que "[s]i los términos de un negocio jurídico bilateral son claros y

no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras". Art. 354 (b) del Código Civil, 31 LPRA sec. 6342. Por lo tanto, "en ausencia de ambigüedad, el cumplimiento con las cláusulas del contrato es obligatorio y su contenido es la ley entre las partes". R.J. Reynolds v. Vega Otero, supra, pág. 708.

"Los términos del contrato de seguro se consideran claros cuando su lenguaje es específico, sin que dé lugar a dudas o ambigüedades, o sin que sea susceptible a diferentes interpretaciones". Rivera Matos et al. v. Triple S et al., supra, pág. 1021. Sin embargo, debido a que el contrato de seguro es un contrato de adhesión, las cláusulas dudosas o ambiguas deberán interpretarse liberalmente en beneficio del asegurado. Íd.

**B. La validez de la cesión post-pérdida de una póliza de seguro**

Por estar intrínsicamente relacionados, discutiremos los tres errores en conjunto. Triple-S arguye que San Luis violó el contrato de seguro suscrito entre ellos, específicamente la Cláusula F de las Condiciones Comunes de la Póliza (Condición F), porque suscribió un acuerdo de cesión con Attenure. En lo pertinente, la Condición F dispone:

> F. Transfer of Your Rights And Duties Under This Policy
>
> **Your rights and duties under this policy may not be transferred without our written consent** except in the case of death of an individual named insured. [...]. (Énfasis nuestro). Ap. Ap., pág. 118.

Por su parte, el Contrato de Cesión subscrito entre Almonte Ponce, LLC -empresa propietaria de San Luis Apartments- y Attenure, en lo concerniente dispone:

> Cesión de las Reclamaciones. Mediante este Acuerdo, Cedente, irrevocablemente y permanentemente, vende, transfiere, traspasa, cede, otorga y entrega a Cesionario, y Cesionario compra, adquiere y acepta de Cedente, título en pleno dominio de un interés en común pro-indiviso en la totalidad de todas y cada una de las Reclamaciones, a ser retenido en conjunto con los intereses de Cedente (este "Traspaso de Reclamaciones"). **Este Traspaso de las Reclamaciones no constituirá una cesión o traspaso de las Pólizas de Propiedad en sí. Para propósitos de este acuerdo, "Reclamaciones" significa e incluirá cualesquiera y todas las reclamaciones potenciales o existentes, causas de acción, derechos, acciones, cargas, reclamos, reconvenciones, demandas, obligaciones, reembolso, remedios contractuales, responsabilidades y daño de cualquier tipo y naturaleza**… (Énfasis nuestro) Ap. Ap., pág. 250.

Según Triple-S, el Contrato de Cesión es contrario a derecho porque los Asegurados en ningún momento le solicitaron autorización para realizar la cesión. Particularmente, alega que la Condición F obliga a los Asegurados a contar con la autorización de Triple-S, previo a la otorgación de un contrato de cesión como el suscrito por las partes.

Una lectura integrada de la Condición F, el Contrato de Cesión suscrito entre las partes, las normas de hermenéuticas locales y la jurisprudencia interpretativa en las jurisdicciones hermanas sobre la validez de los

contratos de cesión como el aquí suscrito, demuestra lo inmeritorio que resulta la contención de Triple-S.

En primer lugar, la Condición F no deja claro si la prohibición de cesión de la póliza se extiende luego de haber ocurrido el daño o pérdida que activa el derecho a reclamar. Ante la falta de claridad nos corresponde interpretar la cláusula en controversia. En esa encomienda hemos reiterado que "las normas del derecho angloamericano son de gran valor persuasivo en nuestra jurisdicción, ello porque las pólizas de seguro que se mercadean en Puerto Rico, de ordinario, son modelos semejantes o idénticos a las que vende las compañías de seguros" en todo Estados Unidos. Echandi Otero v. Stewart Tittle, 174 DPR 355, 378 (2008); Domínguez v. GA Life, 157 DPR 690 (2002); Meléndez Piñero v. Levit & Sons of P.R., 129 DPR 521 (1991).

Los formularios utilizados en la póliza suscrita entre San Luis y Triple-S, fueron redactados por el *Insurance Services Office, Inc*. (ISO). El ISO es una entidad privada que provee, en toda la nación, formularios estandarizados de pólizas de seguros. Verisk, ISO Forms, https://www.verisk.com/insurance/products/iso-forms/ (última visita, 15 de febrero de 2022). El formulario donde se encuentra la Condición F, está denominado como el Form IL 00 17 98. Ap. Ap., pág. 118. Por lo tanto, al ser una disposición que se utiliza en toda la nación, la jurisprudencia interpretativa sobre esa cláusula es de gran ayuda en nuestra labor adjudicativa. De igual forma, son

útiles "los tratadistas de seguros donde se origina este tipo de póliza". Albany Ins. Co. v. Cia. Des. Comercial P.R., 125 DPR 421, 427-428 (1990).

En Puerto Rico, no nos hemos expresado sobre la validez de este tipo de acuerdos. Sin embargo, el Tribunal Federal para el Distrito de Puerto Rico evaluó en In re San Juan Dupont Plaza Hotel Fire Litigation, 789 F. Supp. 1212 (1992), una cláusula anti-cesión en una póliza de seguros, similar a la que tenemos ante nuestra consideración, que leía de la siguiente manera: "*[a]ssignment of this policy shall not be valid unless we [Wausau] give our written consent*". Íd., pág. 1216.

En ese caso, los asegurados cedieron sus reclamaciones a PSC, luego del fuego que destruyó las facilidades del San Juan Dupont Hotel Plaza. El asegurado, al igual que en nuestra controversia, alegaba que la cesión suscrita contravenía la cláusula anti-cesión contenida en la póliza de seguro. En cambio, el tribunal federal validó la cesión tras resolver que la cesión de las reclamaciones, luego de ocurrido el fuego, no aumentó el riesgo de la aseguradora ni la colocó en peligro de sufrir una pérdida, por lo que no se causó un perjuicio. Íd. El foro federal enfatizó, citando el tratado de Couch on Insurance, que muchos tribunales estatales y federales han considerado que ese tipo de disposición anti-cesión es inaplicable cuando el asegurado cede el derecho de acción sobre la póliza después de que se

haya producido el daño o cede una reclamación sobre la póliza una vez que esta ha caducado. Íd.

Al igual que el Tribunal Federal de Distrito para Puerto Rico, diversas jurisdicciones estatales han abordado la controversia sobre la validez de las cesiones post-pérdida. La mayoría de ellas han determinado que este tipo de cláusula aplica únicamente a las cesiones previo al evento que causó las pérdidas, y no impide una cesión posterior. El fundamento es que la cláusula, por sus propios términos, prohíbe normalmente la mera cesión de la póliza, pero no una reclamación derivada de ella. La cesión antes de la pérdida o daño implica la transferencia de una relación contractual, mientras que la cesión después de la pérdida o daño es la transferencia de un derecho a una reclamación de dinero. Véase: 2 Plitt, Maldonado and Roger, supra, sec. 35:8.

De los 48 estados de la Unión y el Distrito de Columbia que han abordado la controversia sobre la validez de las cesiones post-pérdida, 43 han determinado que las cláusulas anti-cesión no aplican post-pérdida.[1]

---

[1] Determinaciones de los máximos foros estatales: Perry v. Merchant's Ins. Co., 25 Ala. 355, 363 (1854) (Alabama); Fulton v. Lloyds, 903 P.2D 1062, 1062 (1995) (Alaska); Farmers Ins. Exch. v. Udall, 424 P. 3d 420, 424 (Appl. Ct. 2018) (Arizona); Macbride v. Aetna Life Ins. Co., 126 Ark. 528, 534 (1917)(Arkansas); Flour Corp. v. Superior Court, 354 P .3d 302, 334 (2015) (California); Metro Life Ins. Co. v. Lanigan, 222 P. 402, 403 (1924) (Colorado); Antal's Rest. v. Lumbermen's Mut. Cas. Co., 680 A.2d 1386, 1389 (1996) (District of Columbia); W. Fla. Grocery Co. v. Teutonia Fire Ins. Co., 77 So. 209, 2010-2011 (1917) (Florida); Ga. Coop. Fire Ass'n v. Borchardt & Co., 51 S.E. 429, 430 (1905) (Georgia); Ginsburg v. Bull Dog Auto Fire Ins. Ass'n, 160 N.E. 145, 146 (1928) (Illinois); Travelers Cas. & Sur. Co. v. U.S. Filter Corp., 895 N.E. 2d 1172, 1174 (2008) (Indiana); Conrad Bro. v. John Deere Ins. Co., 640 N.W. 2d 231, 237 (2001) (Iowa); Bolz v. State Farm Mut. Inc. Co., 52 P. 3d 898, 908 (2002) Kansas); Wehr Constructors Inc. v. Assurance Co. of Am., 384 S.W. 3d 680, 688 (2012) (Kentucky); In re Katrina Canal BVreaches Litig., 63 So. 3d 955, 957 (2011) (Louisiana); Wash. Fire Ins. Co. of Baltimore v. Kelly, 32 Md. 421, 437 (1870) (Maryland); Dadmun

En particular, resulta meritorio estudiar la determinación del Tribunal Supremo de Louisiana en In re Katrina Canal Breaches Litigation, 63 So. 3d 955 (La. 2011). Como sabemos, esa jurisdicción hermana, es de tradición civilista, igual que la nuestra.

Luego del paso del Huracán Katrina, el estado de Louisiana estaba encargado de la distribución de los fondos federales para la reparación y reconstrucción de las viviendas afectadas por el evento atmosférico. El Estado presentó diversas reclamaciones en contra de las aseguradoras, por entender que no estaban utilizando

Mfg. Co. v. Worcester Mut. Fire Ins. Co., 52 Mass. 429, 435 (1846) (Massachusetts); Roger Williams Ins. Co. v. Carrington, 5 N.W. 303, 304 (1880) (Michigan); Star Windshield Repair, Inc. v. W. Nat'l Ins. Co., 768 N.W. 2d 346,350 (2009) (Minnesota); Magers v. Nat'l Life & Acci. Ins. Co., 329 S.W. 2d 752,756 (1959) (Missouri); Baker v. Union Assurance Soc'y, 264 P.132,134 (1928) (Montana); Star Union Lumber Co. v. Finney, 52 N.W. 1113, 1116 (1892) (Nebraska); New Hampshire Mfg. Self Ins. Group Trust v. Continental Cas. Co., 2008 WL 6466547 (2008) (New Hampshire); Givaudan Fragrances Corp. v. Aetna Cas. & Sur. Co., 151 A. 3d 576, 579 (2017) (New Jersey); Espinosa v. United of Omaha Life Ins. Co., 137 P. 3d 631, 639 (2006) (New Mexico); NC Venture I, L.P. v. Valley Forge Ins. Co., 872 N.Y.S. 2d 692 (2008) (New York); United States v. Lititz Mut. Ins. Co., 694 F. Supp. 159, 162 (1988) (North Carolina); Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co., 861 N.E. 2d 121, 128 (2006) (Ohio); Am. Alliance Ins. Co. of N.Y. v. McCallie, 319 P. 2d 295, 298 (1957) (Oklahoma); Egger v. Gulf Ins. Co., 903 A. 2d 1219, 1222 (2006) (Pennsylvania); Ligon v. Metro. Life Ins. Co., 64 S.E. 2d 258, 264 (South Carolina); Manley v. Auto. Ins. Co. of Hartford, 169 S.W. 3d 207, 214 (2005) (Tennessee); Time Fin. Corp v. Johnson Trucking Co., 458 P. 2d 873, 875 (1969) (Utah); In re Ambassador Ins. Co., 965 A. 2d 486, 490-491 (2008) (Vermont); Aetna Ins. Co. v. Aston, 96 S.E. 772, 774 (1918) (Virginia); Pub. Util. Dist. No. 1 v. Int'l Ins. Co., 881 P. 2d 1020, 1028 (1994) (Washington); Smith v. Buege, 387 S.E. 2d 109, 116 (1989) (West Virginia); Max L. Bloom Co. v. U.S. Cas. Co., 210 N.W. 689, 694 (1926) (Wisconsin). Determinaciones de tribunales estatales apelativos o Tribunales de Distritos: Peck v. Public Serv. Mut. Ins. Co., 114F.Supp. 2d 51, 56 (D. Conn. 2000) (Connecticut); Hartman v. State Farm, CV-03-06793 (1st Dist. Kootenai City, 2004) (Idaho); Bristol W. Ins. Grp. v. Begin, 2004 Me. Super. Lexis 126 (Me. Super. Ct., Cumberland City, 2004) (Maine); Titan Exteriors, Inc. v. Certain Underwriters at Lloyd's, London, 297 F. Supp. 3d 628, 633 (N.D. Miss. 2018) (Mississippi); Nat'l Am. Ins. Co. v. Jamison Agency, Inc., 501 F. 2d 1125, 1128, 1129 (8th Cir. 1974) (South Dakota).

adecuadamente los fondos asignados. In re Katrina Canal Breaches Litigation, supra, págs. 957-958.

Similar a la controversia ante nuestra consideración, en In re Katrina las aseguradoras sostenían que las cesiones post-pérdida eran contraria a derecho. A esos fines, argumentaron que las cláusulas post-pérdida son aplicables a la luz del Art. 2653 del Código Civil de Louisiana, La. C.C. art. 2653, que establece que no se puede ceder un derecho cuando el contrato del que este surge prohíbe su cesión.[2] Íd. Además, las aseguradoras argumentaron que el Tribunal Supremo de Louisiana no debería crear una excepción judicial al Art. 2653, supra, como cuestión de orden público. Expresaron que esa función le correspondía al poder legislativo. Íd.

Por su parte, el estado de Louisiana argumentó que el Art. 2653, supra, solo prohíbe la cesión de un derecho si el contrato así lo establece. Expresó que los contratos de seguros suelen establecer que la cesión de la póliza no es válida a menos que el asegurador dé su consentimiento. Ahora bien, estableció que estos contratos de seguro no prohíben la cesión después del daño. Por último, el estado también argumentó que el máximo foro de Louisiana no tenía que crear una excepción a la política pública del Art. 2653, supra. Solo tenía que seguir la norma nacional imperante.

---

[2] "A right cannot be assigned when the contract from which it arises prohibits the assignment of that right. Such a prohibition has no effect against an assignee who has no knowledge of its existence." Art. 2653 del Código Civil de Louisiana, La. C.C. art. 2653.

Así las cosas, el Tribunal Supremo de Louisiana concluyó que al ser la industria de seguro un sector altamente regulado, las aseguradoras saben muy bien de la distinción entre cesiones previas y posteriores a la pérdida. La cesión posterior a la pérdida de las reclamaciones derivadas de la póliza no es equivalente a la cesión de la propia póliza, o de un interés en ella. Debido a esa distinción, el Tribunal Supremo de la jurisdicción hermana entendió que correspondía a las aseguradoras incluir un lenguaje claro e inequívoco en sus pólizas al respecto. In re Katrina Canal Breaches Litigation, supra, pág. 963.

En esa línea, reconoció que las aseguradoras tienen derecho a limitar su responsabilidad y a imponer condiciones razonables a las obligaciones de la póliza, en ausencia de un conflicto con las disposiciones legales o el orden público. Íd. Ahora bien, debido que las pólizas de seguro son contrato de adhesión, cualquier contradicción o ambigüedad en el contrato debe interpretarse estrictamente en contra del asegurador, la parte que redactó la póliza, a la luz del Art. 2056 del Código Civil de Louisiana, LSA-C.C. Art. 2056. Íd.

A esos efectos, ante la ambigüedad y la falta de un lenguaje claro, el Tribunal Supremo de Louisiana adoptó la norma mayoritaria y autorizó las cesiones de las pólizas de seguros post-pérdida. Íd., pág. 964.("*There is no public policy in Louisiana which precludes an anti-assignments clause from applying to post-loss assignments*").

A igual conclusión llegó el Tribunal Supremo de Iowa al expresar que "una vez que el daño o pérdida ha activado las disposiciones de responsabilidad de la póliza de seguro, una cesión ya no se considera una transferencia de la póliza real. Por el contrario, se trata de una transferencia de un derecho de acción en virtud de la póliza". (Traducción nuestra y Citas depuradas). Conrad Bros. v. John Deere Ins. Co., 640 N.W. 2d 231, 237-238 (2001). ("*once the loss has triggered the liability provisions of the insurance policy, an assignment is no longer regarded as a transfer of the actual policy. Instead, it is a transfer of a chose in action under the policy*").

En esa línea, expresó que una vez ocurre el daño o la pérdida "la relación asegurador-asegurado es más análoga a la de un deudor y un acreedor, sirviendo la póliza como prueba del importe de la deuda". (Traducción nuestra y Citas depuradas). Conrad Bros. v. John Deere Ins. Co., supra, pág. 238 ("*At this point, the insurer-insured relationship is more analogous to that of a debtor and creditor, with the policy serving as evidence of the amount of debt owed*").

No vemos por qué debamos apartarnos de la norma mayoritaria. En primer lugar, fiel al mandato del Art. 11.250 del Código de Seguros, supra, evaluamos la Condición F a "base del conjunto total de sus términos y condiciones" y no encontramos una prohibición expresa de las cesiones post-pérdida. A igual conclusión llegamos al estudiar el Art. 11.280 del Código de Seguros, supra, que dispone en su inciso

(a) que una "póliza podrá ser transferible o no transferible, según se disponga por sus términos". Nada de lo dispuesto en el precitado artículo prohíbe la cesión post-pérdida. La cláusula anti-cesión contenida en la póliza subscrita entre Almonte Ponce, LLC -empresa propietaria de San Luis Apartments- y Triple-S, no contenía disposición alguna a los efectos de prohibir las cesiones post-pérdida.

Ahora bien, ante la falta de claridad de la Condición F, nos vemos precisados a estudiar las interpretaciones que las jurisdicciones hermanas les han dado a las cláusulas que prohíben la transferencia de las pólizas de seguros, similares o iguales a la Cláusula F suscrita en la póliza entre las partes en controversia. Esto es de relevancia particular porque los formularios utilizados en las pólizas de seguros en esta jurisdicción, como el que estamos estudiando, provienen de modelos que se usan en toda la nación. Por lo tanto, luego de estudiar la jurisprudencia y los tratadistas que han abordado la jurisprudencia, es forzoso concluir que el lenguaje de la Cláusula F en controversia no prohibía la cesión post-pérdida de la póliza suscrita entre San Luis y Triple-S.

La cesión suscrita por las partes no expuso a Triple-S a un riesgo mayor o menor de lo estipulado en la póliza. Lo que cedió San Luis fue una reclamación monetaria y no la póliza. La cesión no implicó un aumento en la cantidad asegurada, un cambio en la propiedad asegurada, la cubierta, las exclusiones dispuestas en la póliza ni el periodo de

cubierta. Todo se quedó igual. Por consiguiente, el riesgo de Triple -S no aumentó con el cambio de identidad del reclamante. 3 Plitt, Maldonado and Roger, supra, sec. 35:8 ("*The purpose of a no assignment clause is to protect the insurer from increased liability, and after events giving rise to the insurer's liability have occurred, the insurer's risk cannot be increased by a change in the insured's identity*"). El rol de Attenure es procesar la reclamación y hacer las gestiones de cobro de lo que en derecho le corresponde a San Luis, según la póliza. Es por ello que San Luis -como asegurado- se mantiene como parte del pleito y con el interés de obtener los benéficos pactados en la póliza. No hay ningún riesgo para la aseguradora porque el adquiriente del derecho a la reclamación monetaria del asegurado sea tan efectivo que logre recobrar lo que en derecho las aseguradoras tienen que pagar.

## III

Por los fundamentos antes expuestos, se revoca el dictamen del Tribunal de Apelaciones y se reinstala la resolución del Tribunal de Primera Instancia denegando la moción de desestimación de Triple-S. Se devuelve el caso a ese foro para la continuación de los procedimientos de forma compatible con lo dispuesto en esta Opinión.

Se dictará sentencia de conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

San Luis Center Apartments,
Almonet Ponce, LLC; Albors
Property Corp., Attenure
Holdings Trust II y HRH
Property Holdings, LLC

    Peticionarios           AC-2021-0005

        v.

Triple-S Propiedad, Inc.

    Recurrida

SENTENCIA

En San Juan, Puerto Rico, a 15 de febrero de 2022.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se revoca el dictamen del Tribunal de Apelaciones y se reinstala la resolución del Tribunal de Primera Instancia denegando la moción de desestimación de Triple-S. Se devuelve el caso a ese foro para la continuación de los procedimientos de forma compatible con lo dispuesto en esta Opinión.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo